NICKERSON v. NICKERSON.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY—INDEFINITENESS—PERFORMANCE—EQUITABLE RELIEF.

On a bill by a son, after the father's death, for the specific performance of a contract whereby the father agreed to convey, at some future time, to plaintiff, certain farm land upon condition that the latter move upon the same, clear it, work it, and make a home upon it, said contract held, not too indefinite and uncertain to admit of equitable relief, where plaintiff has fully performed.

2. SAME—CONTRACT—PROOF—SUFFICIENCY.

Testimony held, sufficient to support the conclusion that said contract was made, and that the father agreed to deed the land in his lifetime.

3. SAME—CONTRACT TO WILL ENFORCEABLE IN EQUITY.

If the contract was that the father would leave the land to plaintiff in his will, equity would still afford relief in case of breach.

Uncertainty as to time as affecting right to specific performance, see note in 2 L. R. A. (N. S.) 221.

4. SAME—LACHES.
Where plaintiff and the father were on good terms, and the father always recognized the land as belonging to plaintiff, the latter was not guilty of laches in taking no steps for upwards of 40 years to compel the father to perform.

5. LACHES—DELAY ALONE INSUFFICIENT.
Delay alone in enforcing a right does not necessarily indicate laches, since laches may only be predicated where delay is accompanied by prejudice to the rights of others who claim adversely.

6. SPECIFIC PERFORMANCE—ISSUES—EQUITY—FOREIGN JURISDICTION.
Defendant's contention that if plaintiff was entitled to the Michigan land in dispute, defendant was equitably entitled to certain Ohio land belonging to the father's estate, and that plaintiff should be compelled to quitclaim to defendant his interest in the Ohio land, *held*, not in issue in this case, but should properly be settled in the courts of Ohio.

Appeal from Ionia; Davis (Frank D. M.), J. Submitted January 14, 1920. (Docket No. 80.) Decided February 27, 1920.

Bill by John Nickerson and another against Eva Nickerson for the specific performance of a land contract. From a decree for plaintiffs, defendant appeals. Affirmed.

*Hawley & Eldred,* for plaintiffs.

*Nichols & Locke, J. W. Barry,* and *J. C. Williamson,* for defendant.

Prior to 1874, Levi Nickerson lived in Morrow county, Ohio. He had two sons, John, the plaintiff, the elder, and Mack, the deceased husband of the defendant, the younger. In that year, Levi Nickerson purchased 160 acres of heavily timbered land in Campbell township, Ionia county, this State. Levi came to Michigan in the fall of 1874 with his younger son,

Mack, then aged about 13 years, and spent the winter of '74-'75 on the farm. He cut and cleared a small patch, variously estimated at from one-quarter of an acre to one acre, and told the neighbors that he intended to send his elder son, John, to Michigan to clear the place and make a home upon it, in which event he intended to give John a deed of it.

In the following spring, 1875, John came to Michigan, entered into possession of the farm, and from that time to the present has been in full and undisputed occupancy of the same. He has cleared a large portion of it, erected good buildings and good fences thereon, and appears during the long period of upwards of 40 years to have treated the place as his own. In the meantime, the farm has increased rapidly in value until it is now said to be worth upwards of $100 per acre.

Levi Nickerson, the father, continued to live on a farm he owned in Ohio consisting of 68½ acres, his younger son, Mack, living with him. He died in October, 1916, never having delivered to plaintiff John the deed of the 160 acres in Ionia county. After his death, some negotiations were had between the plaintiff John and his brother, Mack, relative to a division of the estate, which, however, were never consummated.

Prior to the death of Mack, he deeded to his wife, defendant Eva, his interest in the Ohio lands belonging to Levi as well as to the Michigan lands in question in this suit. After the deed of the Michigan lands was recorded and in April, 1918, plaintiffs filed the bill in this case by which, as amended, they pray for specific performance of an alleged oral contract for the conveyance by Levi to John of the 160-acre farm in Michigan. Mack Nickerson died in 1918 without issue and we are advised in the brief of counsel for appellee that since the determination of this cause in the court below, Eva Nickerson has likewise deceased; so that

at the present time, plaintiff John Nickerson is the sole surviving heir at law of Levi.

After a very full hearing in the court below, a decree was entered in conformity with the prayer of the bill, from which decree defendant Eva Nickerson, then living, perfected an appeal to this court.

BROOKE, J. (*after stating the facts*). Appellant's claims are set out as follows:

"1. That the contract alleged was indefinite and uncertain as to the time of the performance and the amount of improvements.

"2. That the proofs failed utterly to show a contract made and accepted, and that plaintiff's possession and improvements were as consistent with his expectancy as an heir of his father as that he relied on any contract.

"3. That the entire testimony relative to the alleged contract consisted of casual declarations made by Levi Nickerson to strangers many years ago, and which are more consistent with the testamentary intent expressed by him than with the fact that he had made a contract with his son John Nickerson.

"4. That the entire proofs showed that Levi Nickerson intended to leave a farm at his death to each of his sons, and if under any circumstance the court finds that this amounted to a contract, before plaintiffs can be granted relief, they must quitclaim their title in the Ohio lands to the defendant.

"5. The plaintiffs were guilty of laches, having waited 1½ years after the death of Levi Nickerson and until Mack Nickerson died, and 44 years after making the alleged contract, and having waited until the death of Mack Nickerson and Levi Nickerson, defendant's evidence was destroyed.

"6. Plaintiffs are estopped by their conduct to now claim a right to specific performance.

"7. The court refused to permit witness Eva Nickerson, defendant, to testify to admissions of John Nickerson, the plaintiff, made in the presence of Mack Nickerson, defendant's grantor."

A careful examination of this rather voluminous record convinces us that Levi Nickerson, deceased fa-

ther, bought the farm in question with the intention of deeding it to plaintiff John at some indefinite time in the then future, upon condition that John should enter into possession thereof, clear it, work it, and make a home upon it. It is in evidence that about the year 1893, Levi Nickerson told one of the witnesses that he had executed a deed of the farm to John and would deliver it to him so soon as he had secured a divorce from his first wife, with whom he had had difficulty and from whom it appears he was finally divorced.

There appears to have been a very full performance on behalf of plaintiff John of his part of the contract. He left the home of his boyhood, in Ohio, came to Michigan and settled upon a piece of very heavily timbered land in a section where there were no roads, the farm being reached by a trail through the forest. With infinite labor, through a long period of more than 40 years, he cleared and improved the farm, erected buildings and fences thereon, and created a very large portion of its present value.

In the meantime, his father, Levi Nickerson, visited him occasionally and saw all that he did and himself never exercised nor attempted to exercise any acts of dominion over the farm. At intervals during the 40 years, John considered the advisability of selling the farm. Correspondence was had between him and his father, Levi, in the course of which language was used by Levi which very clearly indicates that he considered the farm in question was the property of John. In one letter, bearing date April 11, 1898, he said:

"Now you wanted to know what I was going to give you if you sold. I do not want anything from the place but if you sell you must have somewhere to put the money so you won't lose it."

Again, in a letter apparently written about 1915, he said:

"Now take good advice and stop right there and stay where you are. You have got plenty of land where you are. You have put 40 years to fix up and now you want to take the good of it. If you are going north, I want to stay there when you are gone. Give up that north and come after me soon. John, give north up; be contented where you are, and serve God."

Referring to the contention that the contract sued upon is too indefinite and uncertain as to time of performance, it must be said that it is quite as definite as many of those as to which equitable relief has been granted by this court. *Taft* v. *Taft*, 73 Mich. 502; *Brown* v. *Brown*, 163 Mich. 337; *Hogan* v. *Hogan*, 187 Mich. 278; *Friend* v. *Smith*, 191 Mich. 99; *Prendergast* v. *Prendergast*, 206 Mich. 525.

It is asserted that the contract alleged was not proven and that the declarations of Levi Nickerson indicated testamentary intent only. We are of the opinion that the contrary appears from this record. A fair consideration of the testimony supports the conclusion that Levi agreed to deed the lands in question to John during his lifetime. But if it is assumed that the contract was that he should leave it to him in his will, nevertheless equity would afford relief in case of the breach. *Howe* v. *Benedict*, 176 Mich. 522.

It is claimed that the plaintiffs were guilty of laches in taking no steps for upwards of 40 years to compel the father, Levi, to perform his part of the contract. It should be remembered that the parties then in interest were father and son, that the utmost confidence and good feeling apparently existed between them. Levi never interfered with the possession of his son nor interposed the slightest objections (beyond friendly advice) when John desired to sell. Besides, it is well settled that delay alone in enforcing a right does not necessarily indicate laches. Laches may only be predicated where delay is accompanied by prejudice

to the rights of others who claim adversely. *Humiston, Keeling & Co.* v. *Yore,* 181 Mich. 629.

The testimony of Eva Nickerson, the defendant, was excluded. She offered to testify that after the death of Levi plaintiff John and her husband, Mack, negotiated for a settlement of their interests in Levi's estate on the basis of Mack quitclaiming to John his interest in the Michigan lands and John quitclaiming his interest in the Ohio lands to Mack and the payment of $2,000 to Mack. It would seem that this testimony was properly excluded as evidencing an abortive attempt to compromise a threatened litigation. But, assuming such testimony had been received, it could have no legal bearing on the exact point at issue.

It is strongly urged by counsel for appellant that plaintiffs, being in a court of equity, should be compelled to do equity—meaning that they should be compelled to quitclaim to defendant their interest in the Ohio lands. Upon this question, we are satisfied with the conclusion of the learned circuit judge:

"As to the claim by defendant that this court should determine that Mack was entitled to the Ohio land if John is to the Michigan land: I am not satisfied, simply because of any talk between the two sons after the death of Levi, that this court can settle his rights. It seems that his estate is being administered in Ohio, and if he has a claim against his father entitling his estate to hold the 68½ acres his estate will have to settle that right in the courts of Ohio. The issue at this time is as to John's right by virtue of the agreement with his father."

The decree is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.