Annie Grace Battle, sometimes called Grace Herring Battle, *et vir.,* v. Helen Butler, individually and as Executrix of Last Will and Testament of C. C. Butler, Deceased, *et al.*

189 So. 846

Division A

Opinion Filed June 2, 1939

*W. E. Smith,* for Appellants;

*Jennings & Watts, Edwin M. Clarke, Uly O. Thompson, J. W. Pettyjohn* and *Crawford & May,* for Appellees.

Buford, J.—Appellant exhibited her bill of complaint in the Circuit Court of Duval County, Florida, in which she alleged, *inter alia:*

"2. Plaintiffs further aver that prior to her marriage to J. L. Battle, Annie Grace Battle's name was Annie Grace Butler, and she lived with Helen Butler and her husband, C. C. Butler, as their daughter, at the city of Jacksonville, Duval County, Florida, that plaintiff, Annie Grace Butler, was born on the 8th day of September, A. D. 1903, and that Jacob Hardy Butler and Sarah E. Butler, now residing at Leesburg, in Lake County, Florida, are her parents; that during the year 1911 the plaintiff Annie Grace Butler was residing with her parents, Jacob Hardy Butler and Sarah E. Butler, at the city of Jacksonville, in Duval County, State

of Florida, and that C. C. Butler and his wife, Helen Butler, then also resided at the city of Jacksonville, in Duval County, State of Florida, and about two city blocks from the home of plaintiff, Annie Grace Battle; that the said C. C. Butler and Jacob Hardy Butler were first cousins, that the plaintiff Annie Grace Battle was one of a family of six children and was then about eight years of age; that the said C. C. Butler and his wife were childless and he became very attached to the plaintiff Annie Grace Battle, and she visited his home often; that the said C. C. Butler very much desired to take the plaintiff, Annie Grace Battle, into his home as his daughter, and made this desire known to her parents and finally during the month of August or September, 1911, the said C. C. Butler, with the consent of his wife, Helen Butler, entered into a verbal agreement with the plaintiff, Annie Grace Battle, so far as she was able to enter into such an agreement, and with her parents, Jacob Hardy Butler and Sarah E. Butler, whereby she and her parents agreed to part with plaintiff, Annie Grace Battle, as their own child and give her over to the said C. C. Butler and his wife, Helen Butler, as their child, the said C. C. Butler promising and agreeing that if her parents would let her live with he and his wife and become their child, they would receive her into their home as their own child, would treat her in all respects as if she had been naturally born to them, rear, nurture and care for her, and have her custody and services as their own child, and that on or before the death of said C. C. Butler, he would by his last will and testament, or otherwise, give, devise and bequeath a child's part of all the property then belonging to him, of every kind whatsoever, real, personal or mixed, to plaintiff, Annie Grace Battle, and plaintiffs aver that pursuant to the said agreement she left her own parents and sister and brothers and went to live and did live with

the said C. C. Butler and his wife, Helen Butler, as their daughter, and faithfully complied with the said agreement on her part; that the plaintiff's parents, Jacob Hardy Butler and Sarah E. Butler, surrendered the complete custody, control and education of the plaintiff, Annie Grace Battle, to the said C. C. Butler and his wife Helen Butler; that the said C. C. Butler changed the name of the plaintiff, Annie Grace Battle to Grace Herring Butler; that he sent her to public and private schools, registering her in the name of Grace Herring Butler, and held said plaintiff out to the public as being his own daughter; that at socials and other functions the said C. C. Butler held said plaintiff out as his daughter, assuming full and complete custody and control of her as though she were his natural daughter, and the plaintiff, Annie Grace Battle, become to regard them as her natural parents; that she surrendered up the love and affection of her own parents and sister and brothers; that she was taught by said C. C. Butler and his wife Helen Butler to regard her own mother and father as a cousin, and the said C. C. Butler, and his wife, Helen Butler, as her parents; that the said C. C. Butler and his wife Helen Butler refused to allow the plaintiff, Annie Grace Battle to associate with her sister and brothers as such, or to have anything in common with them, as sister and brothers, but to regard them as distant relatives and she did so regard them, and does yet so regard them; that her natural parents and her sister and her brothers became to her as merely distant relatives; and that the said C. C. Butler and his wife Helen Butler became to the said Annie Grace Battle as natural parents as fully and as completely as though the plaintiff, Annie Grace Battle, had been as a bud cut from its native stalk and transplanted into a foreign tree, and until her majority and marriage to J. L. Battle she continued to live with the said C. C. Butler and his wife

Helen Butler, as their daughter and since her marriage, and yet at this time does continue to perform her duties under said agreement, and to regard the said C. C. Butler and his wife Helen Butler as a dutiful and loving daughter would regard her natural parents.

"3. Plaintiffs further aver that the said C. C. Butler, for some two years before his death, and at the time he executed his purported Last Will and Testament was not of sound mind and memory, but on the contrary was in his dotage, and his mind and memory were so impaired as to render him wholly incapable of making any just and proper distribution of his estate, or to carry out said agreement with the plaintiff, Annie Grace Battle; that on the ...... day of ......, A. D. 1936, the said C. C. Butler was adjudged to be insane by the County Judge's Court of Duval County, Florida, and his said wife, Helen Butler, appointed guardian of his person and estate and that as such guardian the defendant, Helen Butler, came into the possession of all of his property, both real, personal and mixed, and had the management thereof; that at the time C. C. Butler was adjudged insane he was possessed of a very considerable amount of property, both real, personal and mixed; that his personal estate consisted of a large amount of cash and negotiable securities in safety deposit box in bank, the exact amount of which is unknown to the plaintiffs, but plaintiffs aver that the defendant Helen Butler individually and as guardian of the estate of C. C. Butler, an insane person, came into the possession of said cash and negotiable securities and converted same to her own use, and failed to inventory the same, as such guardian, and has failed to inventory the same as executrix of the said estate.

"4. Plaintiffs further aver that the said C. C. Butler died on to-wit: March 18th, A. D. 1937, leaving his last will and testament and codicil thereto, and bequeathed and

devised all of his property to his wife, Helen Butler, making, however, the following bequests, to-wit: To his sister Pearl Woodward, Ten Thousand Dollars ($10,000.00), to his brother Ira Butler Ten Thousand Dollars ($10,000.00), to his brother Jake Butler Ten Thousand Dollars ($10,000.00), and to the widow and children of his deceased brother D. A. Butler Ten Thousand Dollars ($10,000.00) to the exclusion of the plaintiff, Annie Grace Battle, and therein appointed the defendant Helen Butler as the executrix thereof, which said Last Will and Testament and codicil thereto, was on, to-wit: March 26th, A. D. 1937, duly admitted to probate and recorded in the Probate Court, in and for Duval County, Florida, a certified copy of said Will and Codicil thereto is hereto atached and made a part hereof as Exhibit 'B,' and the defendant Helen Butler duly qualified as executrix of the Last Will and Testament and is now the duly appointed, qualified and acting executrix of said Last Will and Testament and Codicil thereto, all of which was contrary to the agreement made with the plaintiff Annie Grace Battle, or with her parents, for her use and benefit in the premises.

"5. Plaintiffs further aver that Jake Butler, one of the legatees named in said will, died after the execution of said will, but before the death of said C. C. Butler, leaving the following named heirs at law, to-wit: Mrs. Jake Butler, his widow, Mrs. Mary Bell Welsh, a daughter, Charles L. Butler, a son, Mrs. Pauline Thomas, a daughter, J. O. Butler, a son, Francis Butler, a son, Walter Butler, a son, and Afton Butler, a son; and plaintiffs aver that the said D. A. Butler, whose widow and children were named as beneficiaries in said will are as follows: Sophie Butler, his widow, and a son Cecil Butler, and another son Fred Butler, and a daughter Marjorie Butler; and plaintiffs make the said Pearl Woodward, Ira Butler and the heirs at law

of Jake Butler, and also the widow and heirs at law of D. A. Butler, parties defendant to this suit, so that their rights and interest may be protected by this Honorable Court.

"6. Plaintiffs further aver that the said C. C. Butler died in the ownership of a large quantity of property, both real and personal and mixed; that he died in the ownership of cash and negotiable securities in safety deposit box in bank of considerable amount and value, the exact amount thereof being unknown to the plaintiffs; that upon the said Helen Butler qualifying as the executrix of his Last Will and Testament and codicil thereto, the County Judge of Duval County, Florida, appointed appraisors of said estate, and an inventory and appraisal was made up, and filed in the County Judge's Court of Duval County, Florida, showing the total value of said estate to be not less than $162,977.92, of which amount was personal property of the value of not less than $12,027.92, and for a more particular description and value of said property plaintiffs attached to the original Bill of Complaint herein a certified copy of the inventory and appraisal of the estate of C. C. Butler, deceased, as Exhibit 'A' thereto, which exhibit is here referred to and made a part of this amended bill as Exhibit 'A,' but plaintiffs aver that the said Helen Butler failed to produce to said appraisors, the cash and negotiable securities aforesaid, but concealed the same, and converted said cash and securities to her own use."

The bill prays requirement of answer not under oath and decree for accounting and "that the plaintiff, Annie Grace Battle, may be decreed to be the owner of an undivided one-half interest in and to all of the property owned by the said C. C. Butler, at the time of his death, both real, personal and mixed, and the income and profits thereof since the date of his death, and that said property be im-

pressed with a trust in favor of plaintiff Annie Grace Battle, and that the defendant, Helen Butler, individually and as executrix of the Last Will and Testament of the said C. C. Butler, deceased, be declared to hold an undivided one-half interest in, and to said property in trust for the plaintiff Annie Grace Battle.

Motions to dismiss and to strike portions of the bill of complaint were interposed and, on hearing, the Court made the following order:

"This cause came on to be heard, after due notice, upon the amended bill of complaint filed herein on June 6, 1938, the decree *pro confesso* heretofore entered herein against certain of the defendants, the motions to dismiss said amended bill of complaint filed herein by the defendant, Helen Butler, individually and as executrix of the Last Will and Testament of C. C. Butler, deceased, and by the defendant Pearl Woodward, and by the defendants Pauline Thomas and J. E. Thomas her husband, and by the defendant J. O. Butler, and by the defendants Sophie Butler, widow of D. A. Butler, Cecil Butler, Fred Butler and Marjorie Butler, heirs of D. A. Butler, deceased, severally, and upon the motions to strike parts of said amended bill filed herein by the defendant Helen Butler individually and as executrix of the Last Will and Testament of C. C. Butler, deceased, and by the defendant J. O. Butler, and by the defendant Pearl Woodward, and by the defendants Sophie Butler, widow of D. A. Butler, deceased, Cecil Butler, Fred Butler and Marjorie Butler, heirs of D. A. Butler, deceased, severally, and was argued and submitted to the Court by the solicitors for the respective parties and the court has read the briefs submitted and carefully considered the same.

"It appears from the amended bill of complaint that the contract of which specific performance is sought covers both real and personal property is wholly verbal, that there

has been no part performance by the persons sought to be charged by delivery thereunder of possession of any real property, or otherwise, sufficient to take the contract out of the statute of frauds and to warrant enforcement of the same as to said real property. It further appears that said contract is indivisible and being unenforceable as to said real property, is also unenforceable as to the personal property involved.

It further appears from said amended bill of complaint that the alleged contract and agreement of C. C. Butler that on or before his death he would by his last will, or otherwise, give, devise and bequeath a child's part of all of the property then belonging to him to the plaintiff, Annie Grace Battle, is too uncertain and indefinite as to the subject matter to be given, devised and bequeathed, and the terms to be complied with, by him to entitle said plaintiff to a decree of specific performance thereof.

"It is therefore the opinion of the court that the equities are with the defendants and against the plaintiffs and that the plaintiffs are not entitled to the specific performance of said alleged contract and that said motions to dismiss said amended bill of complaint should be granted; and the solicitor for the plaintiffs having stated to the court that said amended bill of complaint stated the case of the plaintiffs and that said plaintiffs do not desire to further amend the same, it is thereupon ordered, adjudged and decreed that said motions to dismiss be and the same are hereby granted and that said amended bill of complaint be and the same is hereby dismissed at the cost of the plaintiffs.

"Said motions to dismiss having been granted, the motions to strike parts of said amended bill of complaint are not ruled upon."

We entertain no doubt as to the correctness of the con-

clusions and judgment of the Chancellor. There was no writing embracing the contract and no written memoranda in regard thereto. There was no semblance of delivery of possession by the alleged grantor to the alleged grantee and no possession of real estate exercised by the alleged grantee. In such cases courts will not decree specific performance because such parol contracts are invalid under the Statute of Frauds.

The case nearest in point, which we have found, is that of Hooks v. Ridgewater, 111 Tex. 122, 229 S. W. 1114. Mr. Chief Justice PHILLIPS, speaking for the Court, stated the case as follows:

"The plaintiff, Bob Bridgewater, brought the suit against the administrator of the estate of John W. Davis, deceased, and the heirs at law of Davis, to recover Davis' estate. The suit was, in fact, one to enforce a verbal agreement claimed to have been entered into by the plaintiff's father—at the time his only surviving parent, when the plaintiff was a child of nine years of age and Davis, whereby the father contracted to surrender plaintiff's custody and control to Davis and Davis, a single man who never married, agreed upon that consideration to rear the plaintiff, giving him the care and rights of a son, make him his heir and leave to him at his death all of his property. The trial court found that the evidence established the making of the parol agreement; that Davis took charge of the plaintiff under the agreement when he was thus a child and plaintiff's father never thereafter exercised any control over him; that the plaintiff lived with Davis thereafter, giving him the affection and obedience of a son, and performing chores and services around his home as needed, for which he received no wages or money consideration. Davis failed to bequeath any of his property to plaintiff, dying intestate, leaving an estate of

both real and personal property. Before his death he had not placed the plaintiff in possession of any of it.

"Judgment for the defendants was rendered in the trial court. On the appeal, this was reversed by the Honorable ·Court of Civil Appeals for the First District and judgment rendered for the plaintiff."

And thereupon held:

"As it affected the land belonging to Davis, the contract was plainly condemned by the statute of frauds. It was merely a parol agreement whereby in consideration of the father's surrender of the custody of the plaintiff and the latter's living with Davis as a son, Davis' lands owned at his death should become the plaintiff's property. It was in effect but a parol sale of Davis' lands to be performed by him in the future, and has no higher dignity than such a sale. The question presented by this feature of the case is whether the performance of the contract by the plaintiff relieves it from the operation of the statute of frauds, or, as more accurately stated, renders the contract enforcible in equity notwithstanding the statute. ·

"The Court of Civil Appeals has held that it does, despite the fact that there was never any possession of the lands by the plaintiff in Davis' lifetime.

"To sustain this holding there must be created by judicial authority another exception to the operation of the statute of frauds, one unsanctioned by any previous decision of this Court, and of larger consequence than any heretofore recognized by it. This is evident. For if it be the law that a contract of this kind may, under the circumstances here present, be enforced against a decedent's estate, the entire inheritances of families are, for the benefit of strangers to the blood, put at the mercy of parol evidence. ·

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from

the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensible, and they must all exist. Regardless of the disposition of other courts to engraft other exceptions upon a plain and salutary statute which had its origin in the prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the statute. We think the wisdom of its course has been justified."

The Court further held:

"For such contracts to be enforcible in this State, they must come fairly within the rule. If there has been no surrender of the possession of the land, the contract is not within the rule and is incapable of enforcement. It is no answer to say that the rule does not fit the circumstances of the particular contract. That is no reason for making another rule. The rules of law are not thus to be disregarded or evaded. The rule is necessarily a general one and intended for general application. If a particular case does not fall within it, the statute itself governs and condemns the contract on which the case rests.

The parol contract here has no basis for its enforcement, other than the plaintiff's performance by his assuming with Davis the relation and rendering him the service of a son.

That was the consideration for Davis' agreement to make him the owner of his estate. The case, therefore, is simply one where the consideration for a parol agreement to transfer the title to land has been paid, with no possession of the land surrendered and no valuable and permanent improvements made by the purchaser on the faith of the agreement. In no other character of case resting only upon the payment of the consideration could such a contract be enforced in this State. If the consideration for Davis' agreement had been an amount of money, however large, and had been fully paid, without possession of the land and valuable and permanent improvements the contract would be held incapable of enforcement. If the payment of the consideration is to be held insufficient in one case, it should be so held in all cases."

And the Court further held in that case:

"Aside from the invalidity of the contract as to the land of the estate under the statute of frauds and its being incapable of enforcement because there was no possession by the plaintiff of the land, it is a character of contract which should be held void as a matter of public policy. A parent has no property interest in his child and should not be permitted to deal with his child as property. It was so held in Legate v. Legate, 87 Tex. 248, 28 S. W. 281; but the proposition needs no authority for its support. The law should not encourage the relinquishment by parents of their children and the renunciation of a sacred relation imposed by nature merely for the children's enrichment by placing the seal of validity upon a contract in which a parent in effect barters his child away for a property return. It is more concerning in fostering and maintaining that relation and guarding its valuable and wholesome influences than in promoting the child's financial prosperity. Let it be once held that a parent's contract of this kind is valid and may

be enforced, and every parent will be free to transfer his children to any one willing to pay them well for the bargain. We are unwilling to subscribe to such a doctrine. It tends to the destruction of one of the finest relations of human life, to the subversion of the family tie, and to the reversal of an ordering of nature which is essential to human happiness and the security of society. It reduces parental duty and the child's welfare to the sordid level of financial profit and would license the easy surrender of that duty for merely the child's financial advantage. The custody of a child is not a subject matter of contract and therefore can constitute no consideration for a contract."

As to the first proposition the holding of the Texas Court is in accord with the opinion and judgment in the case of Grant v. Grant, 63 Conn. 530, 38 A. S. R. 379; Shahan v. Swan, 48 Ohio S. R. 25, 26 N. E. 222, 29 A. S. R. 517; Swartz v. Steel, 55 Ohio S. R. 685, 48 N. E. 1118; Austin v. Davis, 128 Ind. 472, 25 A. S. R. 456, 12 L. R. A. 120, 26 N. E. 890; Ellis v. Cary, 74 Wis. 176, 42 N. W. 252, 17 A. S. R. 125, 4 L. R. A. 55; Dicken v. McKinley, 163 Ill. 318, 54 A. S. R. 471; Snyder v. French, 272 Ill. 43, 111 N. E. 489. An endless number of other authorities could be cited.

The rule stated in Wilson v. Wilson, Administrator, 132 Fla. 518, 181 Sou. 385, that, "In suit for the specific performance of an alleged oral contract to devise realty in consideration of personal services rendered deceased, bill was properly dismissed in absence of allegations that deceased intentionally put plaintiff into actual possession or control of any portion of realty in pursuance of alleged agreement," is applicable to the case at bar.

The Florida case of Chamberlain v. Chamberlain, 115 Fla. 15, 155 Sou. 136, is to be differentiated from the case at bar because in that case possession of real estate involved

had been delivered and in the case of Exchange National Bank of Tampa v. Bryan, 122 Fla. 479, 165 Sou. 685, personal property only was involved and in Wood v. Hammel, *et al.,* 132 Fla 164, 181 Sou. 145, the property involved was money which was personal property and not within the statute of frauds.

Other questions presented need not be discussed as the order of the Chancellor must be affirmed, for the reasons hereinbefore stated.

It is so ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in, opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.