OLEN WARREN TODD, et ux., v. LELAND HYZER, as Executor

18 So. (2nd) 888                                    June Term, 1944
July 14, 1944                                    Special Division A

*C. C. Youmans,* for appellants.

*Kurtz, Reed, Sappenfield & Cooper* and *Hyzer & Padgett,* for appellee.

THOMAS, J.:

Since 1938 appellants have occupied the lower of two apartments in a building owned until her death by Clara Zearing. The owner lived in the upper apartment. She had reached the age of 66 years and had been in ill health for a long time immediately preceding her death. She was fond of appellants' children, often assisting them with their studies and showing them other considerations.

In December, 1940, about ten months before Mrs. Zearing's decease, appellants' status changed from lessees to owners by reason of a verbal agreement between her and them. For some time appellants had held the property under a lease, but they were contemplating the purchase of a lot and construction of their home. When deceased learned of their plans she importuned them to remain in her building and agreed that if they should comply with her request, take care of her during her remaining years, keep up the house and grounds, and pay her $45 each month, the property should be theirs at her death. This, said four or five of her

acquaintances, who testified in appellants' behalf, had been stated to them by the deceased.

In execution of this agreement appellants had the floors cleaned, the woodwork varnished, and Venetian blinds installed. They bought considerable furniture and also placed in the apartment other furniture which had been stored by them in a distant state. The cost of painting and cleaning was $102. Appellants also, between the time of the agreement and the death of Mrs. Zearing, showed her many courtesies, helped her with her automobile, took her to market, sent her occasional meals, kept her yard in repair, paid taxes for 1941, and fed her cat. The reference to the cat is not meant to be facetious because, as will be seen when we later refer to her will, she was inordinately fond of the animal. Upon the testimony just recounted appellants relied to substantiate the prayer of their bill that the executor of Clara Zearing's estate be directed to convey to them the property in question. There is much, however, in the record to refute it.

It was testified by other of her acquaintances that the deceased disliked intensely one of the appellants and one of their children. It was said by some of them that other tenants were living in her own apartment with her and caring for her when she died and because of these services were charged no rent. It was stated that the deceased was quite able to drive her car, and actually did so the very day she died. One witness, who apparently had no interest whatever in the controversy, related a conversation held between her and one of the appellants at the funeral home immediately following Mrs. Zearing's death. During the discussion a reference was made to an arrangement similar to the one claimed by appellants to have existed in their behalf, between Mrs. Zearing and some persons named Ward involving other property. (Incidentally, this matter is now being considered by this court in a companion case.) The witness and the appellant joined, so she said, in the hope that "everything was all fixed for them [the Wards]," and the appellant, Warren Todd, was quoted as remarking: "Mrs. Zearing made a proposition like this to me" but "We did not go through with the

contract." The same witness testified that Mrs. Zearing had employed her own yard man, and further quoted Todd as saying that for the paint, or painting, which he did he was allowed credit on his rent. It was developed by the defendant in the trial that at one time shortly before her death Mrs. Zearing had shared her apartment with a lady in return for companionship, and that Mrs. Zearing had worried during the summer preceding her death about the failure of the appellants to indicate an intention to renew their lease. In conversations with still other acquaintances she indicated her desires about disposing of her property, and these declarations corresponded with the provisions of the will which was eventually probated.

It was stipulated by counsel that taxes on the property for 1940 were paid by Mrs. Zearing. Evidently the taxes for the following year were paid by one of the appellants.

We turn to three instruments about which there is no dispute, namely, a memorandum Mrs. Zearing made 1 July 1940 to be consulted "in case of accident or death, or unconsciousness," her will, and the lease to appellants. In the first she requested that in such an emergency some neighbor be asked to care for her cat and that eight stated persons be notified by telephone. She designated the place where she wished to be buried and named the undertakers in Miami and in Lexington, Kentucky, the burial place, whom she wished to have charge of her remains. She nominated an attorney in Miami and one in Kentucky to handle her affairs and a person in Kentucky to make arrangements for her funeral. It is noteworthy that the names of appellants did not appear, and in this connection it is important to state that in a conversation held with an attorney a few days before her death, relative to a proposed cocidil, she mentioned the Wards, to whom we have just referred, but not the appellants.

We will now recite the provisions of the will so far as they are pertinent to this controversy. Mrs. Zearing directed that her cat be placed in the care of a certain friend who should occupy free from rent one of her apartments situated in another part of Miami so long as the cat should live; also that one dollar a week should be paid out of her estate for the

upkeep of the feline. She made three bequests of $1,000 each, and directed that the residue of the estate be divided equally between the First Church of Christ, Scientist, of Miami, Florida, and the Mother Church, the First Church of Christ, Scientist, in Boston, Massachusetts. Again there was no mention of the appellants.

Now for the lease. It was executed the first day of September, 1940, and was to continue one year, the lessees paying the sum of $540, $40 a month for the first six months and $50 for the second. This instrument had no unusual features except the provisions that exterior improvements were to be made by the owner, who should also pay for the water unless the tenants became careless in leaving faucets open, and that plumbing and electrical equipment on the inside of the house were to be kept in repair by the tenants.

It is immediately apparent from a perusal of the transcript that there was sharp dispute about the facts essential to appellants' recovery. They assumed the burden of proving their claim by evidence far more convincing than that revealed in this record, for as it was written in Myers v. Myers, 197 Iowa 1137, 198 N.W. 484, "It is well settled that to establish either a parol gift or contract of conveyance of land the one so claiming must establish the gift or contract by clear, unequivocal, and definite testimony, and that the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the contract or gift." Language very like this is found in the decision of this court in Wood v. Hammel, 132 Fla. 164, 181 So. 145, where Mr. Justice BROWN quoted Holsz v. Stephen, 362 Ill. 527, 200 N. E. 601, 106 A.L.R. 737: " 'Whether the specific performance of a contract will be granted depends in a large measure on the facts in the case. Even where the terms of the contract are clear, certain, and unambiguous, specific performance is not a matter or right, but rests in the sound discretion of the court to be determined from all the facts and circumstances.' "

Generally, it may be said the relief will not be awarded where it would be inequitable, unfair, or unjust. A more definite criterion may, we believe, be reached by a further study of the decisions in Holsz v. Stephen, supra, which we

have approved, Battle v. Butler, 138 Fla. 392, 189 So. 846, and the case there cited, Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216.

Reading further in Holsz v. Stephen we find the significant statement that specific performance will be afforded where one party has performed the contract to such extent "that the parties cannot be placed in status quo or damages awarded which would be full compensation" or, as the same author otherwise states the principle, "The performance relied upon must place the party who has performed in such a situation that it would be a fraud upon him if the agreement were not carried out."

With these references we introduce Hooks v. Bridgewater, supra, from which we quoted at length in Battle v. Butler, supra. The practically important excerpt deals with the rule relieving parol sales from the effect of the statute of frauds. Three elements were held indispensable: (1) payment of consideration, (2) possession by the vendee, (3) installation of "valuable and permanent improvements" by him *or* "the presence of such facts as would make the transaction a fraud upon the purchaser if [the contract] were not enforced." The last aspect is the one which we have already discussed.

We will now advert to the evidence in this case as it may be applied to these elements essential to a decree for appellants.

Obviously amounts paid by them periodically originating as rental payments under the lease could not be construed as any real consideration for the contract. The sum of $45 which they say was to be delivered monthly was the average of the periodical payments required under the lease. The services performed in upkeep of the premises, occasional meals furnished Mrs. Zearing, the care of her pet, and the like are of small consequence when compared with the value of the property in question, that is, even if they were performed, and in view of the conflicting testimony the master and the chancellor were justified in deciding they were not.

Next we reach the element of possession. True, appellants were occupying the property, but this occupancy orig-

inated under a lease, or agreement to rent, at a time when they were but tenants and appellee's testator was landlord. It seems fundamental that a tenant may not claim adversely to his landlord, and we have not found after careful search any circumstances which would cause us to apply any exception which might prove the rule.

This brings us to the two phases of the last element. No permanent improvements were made by appellants.. Placing furniture and furnishings in the apartment could in no sense be considered a permanent improvement. These constituted personal property and could have been moved by the tenants at their pleasure. Even if the cleaning and painting had been done at appellants' expense, which may be gravely doubted, the investment was relatively small, easily established, readily collectible. It isn't clear who furnished the money for the taxes paid after Mrs. Zearing's death, but these amounts, too, are easily ascertained. It should not be overlooked that account should be taken of any money due from appellants for use of the premises since the owner's decease.

We have seen that specific performance is not a matter of right even when the contract is clear and unambiguous, but a matter of discretion; that in cases like the present one the agreement must be established by definite and unequivocal testimony; that in the last analysis the remedy will be available where the parties cannot be returned to their former positions or fraud would result if the contract were not enforced.

Examination of the record in the light of these principles and rules convinces us that there was no abuse of discretion by the chancellor when he found that the appellants had not by testimony of the quality we have described proved a situation entitling them to the decree they sought.

Affirmed.

TERRELL, CHAPMAN and ADAMS, JJ., concur.

BUFORD, C. J., absent.