57 So.2d 439 (1951)
COTTAGES, MIAMI BEACH, Inc., et al.
v.
WEGMAN.
Supreme Court of Florida, en Banc.
October 5, 1951.
Rehearing Denied March 25, 1952.
*440 Harold Ungerleider, Miami Beach, W.O. Mehrtens and Evans, Mershon, Sawyer, Johnston & Simmons, all of Miami, for appellants.
Thomas Jean Ellis, Turk & Newman, Joel P. Newman and Vivian L. Scheaffer, all of Miami Beach, for appellee.
HOBSON, Justice.
This is a case wherein the appellee sought a decree directing a specific performance of an alleged agreement between her and her father, entered into during the latter's lifetime, providing that if appellee, who with her immediate family was residing in New York City, would come to live in Miami Beach and assist in the operation of the business which he wished to be conducted in connection with certain real property that he had agreed to purchase, he would vest in appellee a one-half interest in and to said property. She also prayed that Tillie Bell, Executrix of the estate of her deceased father, be ordered to transfer to her one-half of the total issued and outstanding corporate shares of Cottages, Miami Beach, Inc., a Florida Corporation, which, together with the one share of stock already owned by the appellee, would give appellee a total of one-half of the authorized and issued stock of the corporation; that the corporation account to the appellee for salaries due and owing her; that the corporation account to her for monies advanced by her to the said corporation; that the corporation account to appellee for one-half of its profits from June, 1945.
Samuel Bell, father of appellee, during his lifetime, wrote his daughter, appellee, requesting her to leave her home in New York City and come to live in Miami Beach for the purpose of assisting him in the operation of the business to be conducted in connection with certain real property which he was then in the process of purchasing. As an inducement to the appellee to accept his offer, the father promised his daughter that he would "vest in her a one-half interest in and to the said described property." Whereupon the appellee advised her father that the terms of his offer were acceptable to her. Thereafter the appellee gave up her home in New York City and moved, with her child, to Miami Beach, Florida, pursuant to the said agreement.
The letter that was written to the appellee by her father is not such a written *441 memorandum as can be said to meet the requirements of the Statute of Frauds. Consequently, the agreement must be treated as an oral agreement to convey land. The appellee was permitted to testify that after the letters were received, and particularly the one in evidence, she came to Miami Beach in pursuance of said letters and fulfilled her part of the agreement.
In this equity suit the Chancellor determined that appellee had established that she and her father during his lifetime entered into an agreement to form a partnership and that since the father failed to carry out such agreement appellee was entitled to a decree against the appellants directing that Tillie Bell, as Executrix of the Estate of Samuel Bell, deceased, transfer to appellee 24 shares of its corporate stock. Appellants insist that an agreement to form a partnership was not proved.
It is doubtful the decree can be sustained upon the theory that an agreement to form a partnership was established by the evidence. Nevertheless, we have held repeatedly that we will not reverse a final decree because the reason given by the Chancellor for entering such decree was erroneous, if the decree itself should be free from error. Sheridan v. Respess, 147 Fla. 626, 3 So.2d 704; County of Okeechobee v. Florida National Bank of Jacksonville, 145 Fla. 496, 1 So.2d 263, 274; McGregor v. Provident Trust Co., 119 Fla. 718, 162 So. 323; Roe v. Roe, 95 Fla. 488, 117 So. 108; Broward Estates Corporation v. Chillingworth, 93 Fla. 366, 112 So. 64.
The decree is sustainable on the theory that the evidence discloses such part performance as will take the oral agreement out of the statute of frauds. The agreement amounted to an oral promise to convey an interest in real property. The general rule is that the mere rendition of services by the plaintiff in reliance upon the defendant's parol promise to convey real estate to him, is not a sufficient part performance to warrant the specific enforcement of the oral agreement, where the services are capable of adequate pecuniary measurement and compensation. 49 Am.Jur. 773; 58 C.J. 1017; Rath v. Degener, 352 Ill. 135, 185 N.E. 223; Flannery v. Woolverton, 329 Ill. 424, 160 N.E. 762; Frizzell v. Frizzell, 149 Va. 815, 141 S.E. 868. There is also the rule that the rendition of services by the promisee in consideration of the promisor's oral pledge to convey an interest in land is ordinarily treated as equivalent to payment of the consideration of the contract, and, while this is not in itself sufficient part performance, the rendition of services together with possession of the property to which the contract relates is a sufficient part performance to take the contract out of the statute. 58 C.J. 1020; 101 A.L.R. 1095; Holmes v. Caden, 57 Vt. 111; Denlar v. Hile, 123 Ind. 68, 24 N.E. 170; Winfield v. Bowen, 65 N.J. Eq. 636, 56 A. 728; Ayres v. Short, 142 Mich. 501, 105 N.W. 1115.
This Court has held that the taking of possession and, in addition, the payment of some part or all of the consideration is such part performance as will take an oral contract out of the Statute of Frauds. Pedrick v. Vidal, 95 Fla. 952, 116 So. 857; Clark & Lewis v. Gardner, 91 Fla. 1059, 109 So. 192; Demps v. Hogan, 57 Fla. 60, 48 So. 998. Hence, the latter of the two aforementioned rules is applicable in this State.
However, if this case were controlled by the first mentioned general rule, we are of the view that the services rendered the father by his daughter are not susceptible "of adequate pecuniary measurement and compensation." It is true that the value of appellee's actual work in managing the property could be calculated on a dollars and cents basis but the father must have had some special or personal reason (such as an abiding confidence in the daughter, her integrity, her loyalty and her ability to successfully manage the property) for requesting his daughter to move from New York City and come to Miami Beach to manage and operate the property, or he would have secured the services of some stranger, probably one versed in the field of property management. He did this when on one occasion his daughter left Miami Beach and returned to New York City but thereafter he again importuned *442 her to come back and renew her operation of the rental property. The satisfaction which he obviously received from having his daughter in charge of the Cottages and which stemmed from a natural and normal confidence born of the relationship of parent and child, cannot be evaluated on a pecuniary basis. The evidence shows that appellee received some compensation while acting as Manager but the Chancellor evidently held it was insufficient to adequately compensate her for the services which she rendered her father and that there were other valuable considerations which enured to the benefit, and added to the comfort and contentment, of the parent. It is reasonable, indeed normal and natural, to assume that the daughter's acquiescence in her father's request and the services which she performed consequent thereupon afforded genuine comfort, solace, relief from care, and operated as a "balm in Gilead" to the paternal mind and heart. There is no monetary yardstick by use of which value of such services may be appraised or determined.
The type of kinship which existed is also ample justification for the appellee's failure to attempt to require her father to have one-half of the corporate stock issued to her at the time the corporation was formed. 58 C.J. 1126, Sec. 429; Nickerson v. Nickerson, 209 Mich. 134, 176 N.W. 456; Hall v. Dodson, Mo.Sup., 274 S.W. 462; Gove v. Armstrong, 88 Vt. 115, 92 A. 10.
Moreover, appellee's testimony concerning an altercation and of an inharmonious relation, between her and her step-mother was sufficient showing to excuse the suggested laches or the invocation against her of equitable estoppel.
We must also give consideration to the prejudice or detriment to appellee which would result if the parol contract were not performed in toto. 101 A.L.R. 970 and cases cited therein. In reliance upon her deceased father's promise to "vest in her a one-half interest in and to the said described property" if she would accept his offer, appellee gave up her home in New York and, with her child and household furniture, came to Miami Beach, Florida, where she took possession of the property and operated it for approximately three years prior to the death of her father. By virtue of the agreement which was proposed by the father and which on its face is reasonable, appellee was compelled to disrupt her pattern of life, to sever old ties and associations and to establish new ones in the entirely different milieu of a far distant city.
It is apparent from all of the evidence, that appellee fully performed her part of the oral contract. In accordance with the rule which we approve herein, the appellee's actions constituted payment. It is clear that she was in possession; therefore, she was entitled to invoke the aid of this Court of Equity to enforce the agreement. Moreover, the evidence in this case convinces us that had the Chancellor refused equitable relief such action would have been tantamount to countenancing an injustice amounting to a fraud upon appellee. Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888; Holsz v. Stephen, 362 Ill. 527, 200 N.E. 601, 106 A.L.R. 737; Shaver v. Wickwire, 335 Ill. 46, 166 N.E. 458; Walter v. Hoffman, 267 N.Y. 365, 196 N.E. 291, 101 A.L.R. 919; Hamilton v. Newbold, 154 Va. 345, 153 S.E. 681.
We quote with approval from the opinion of the Supreme Court of Nebraska in Best v. Gralapp, 69 Neb. 811, 96 N.W. 641, 99 N.W. 837, 838, wherein that Court said: "It is to be borne in mind that the plaintiff comes into a court of equity seeking relief, not for a part performance of the conditions of an agreement on his part to be performed, but only after he had discharged every duty resting upon him thereunder and fully performed all that he had undertaken to do. The agreement and its performance on his part are clearly and unequivocally established by the evidence, and it would seem inequitable to deny him the relief prayed for."
Affirmed.
SEBRING, C.J., and ADAMS and ROBERTS, JJ., concur.
TERRELL, THOMAS and CHAPMAN, JJ., dissent.