60 So.2d 770 (1952)
BURTON
v.
KEATON et ux.
Supreme Court of Florida, en Banc.
October 17, 1952.
Field & Spence and D.H. Redfearn, Miami, for appellant.
Julius H. Erstling, Miami, for appellees.
MURPHREE, Associate Justice.
This is a case of specific performance to enforce an oral contract to devise real estate.
Catherine Phillips owned a lot in Miami adjacent to her home on which were two rental houses, 1315 at the front and 1319 at the rear.
Morris Keaton and his wife, Gladys, appellees, rented house 1315 in 1931 from Catherine Phillips and her now deceased husband for $7.50 per week, and they have remained in possession ever since. In November, 1949, Catherine Phillips declined to accept any more rent from the Keatons and thereupon promised to devise to them all of the lot on which they were living in return for past services rendered, affection, and future care so long as she might live, and upon the further condition that they would forego building elsewhere their contemplated home and continue to live where they were; so it was alleged by appellees in their bill of complaint.
From that time on the Keatons paid no more rent. Catherine Phillips, however, continued to collect the rent from her tenant in the house on the rear of the Keaton lot and paid all taxes on the entire lot until she died.
In 1948 Catherine Phillips lost a leg as the result of diabetes. She moved next door to the Keatons in February, 1949. That summer her remaining foot became affected and her condition gradually grew worse. As acts of neighborly kindness and in return for free rent, as appellant would have it, or in acceptance and fulfillment of the said offer to devise, as contended by *771 appellees, the Keatons furnished certain meals to Catherine Phillips, dressed her diseased foot which was sometimes in an offensive condition, kept her company, drove her car for her, helped her look after her property, forewent the contemplated building of their own home and sold a profitable barbecue stand business in December, 1949, so it was claimed, in order to devote more time to the care of Catherine Phillips.
Appellant lived in New York until early March, 1950, when she came to Florida and took up residence with her mother, Catherine Phillips, and helped care for her until her death on June 30, 1950. After the alleged oral promise to devise, Catherine Phillips on April 1, 1950, made her last will and testament in which she left nothing to appellees, but devised all of her property to her daughter and grandchildren.
Appellant, by her answer, denied the alleged promise, that consideration existed for any such promise, and that appellees' possession of the property involved was anything more than as tenants, and even that extended only to one of the two houses on the lot in question.
The case was referred to a Special Master, who found:
(1) "* * * the evidence is clear and unequivocal * * * that the decedent, Catherine Phillips, agreed to leave the property in question unto plaintiffs * * *," meaning the lot with both houses.
(2) "Plaintiffs rendered valuable services to the decedent, Catherine Phillips, for the period from early 1949 until the date of her death. These services consisted of regularly preparing food for the decedent and carrying it to her, cleaning the house of the decedent, carrying the decedent for automobile rides, collecting rentals and assisting the decedent in the maintenance of property which she owned, washing and dressing the diseased foot of decedent, and administering unto her needs when the decedent by reason of her physical condition was unable to care for herself in her diabetic condition."
(3) "In regard to the question of possession * * * the relationship of landlord and tenant * * * ceased to exist when the decedent in consideration of the services which plaintiffs had theretofore, and thereafter, rendered unto her refused to accept rental * * * for the premises * * *."
(4) No valuable and permanent improvements were made to the property, but "* * it would be impossible to restore plaintiffs to their former status by the payment of monetary damages  indeed, if they could be estimated  and that to not enforce the decedent's promise to devise the property * * * would constitute a fraud upon plaintiffs."
Exceptions to the Master's report were overruled and the Chancellor ordered appellant, individually and as executrix of the Estate of Catherine Phillips, deceased, to convey all of the lot in question, including both houses, to the appellees, and to turn over to them all rents collected from the rear house, 1319, since the death of Catherine Phillips.
Essentially, appellant advances three grounds for reversal. First, the alleged oral contract to devise is not enforceable because it lacked definiteness as to the property intended. Second, if there were a contract and it be deemed to encompass the entire lot, possession of only one of the houses was not sufficient. Third, to deny enforcement of the alleged contract would not work a fraud upon the appellees.
We do not overlook appellant's further contentions that there was no binding promise to devise anything at all to appellees, and that the landlord-tenant relationship was never terminated. It is simply our view that sufficient testimony was produced to support the Chancellor's affirmative conclusion on these points.
There is ample proof that Catherine Phillips promised to devise to appellees the home in which they were living, 1315, in return for their past and future services; but the record does not indicate, let alone clearly show, that she intended to include the rear house in the bargain. The language of decedent as related by the several witnesses who talked with her, together with the circumstances that until her death *772 she paid all taxes on the entire lot and collected all rentals from the latter house, dictate this result.
But, appellant urges, specific performance will not lie to enforce the agreement if it be deemed to include merely the home in which appellees lived, because no boundaries were specified, and to do so would be for the court to make the contract for the parties.
It is stated in 57 Am.Jur. 175, section 197:
"As a general rule, if the language employed leaves the intention of the parties in doubt, or if there is uncertainty in regard to what was intended, a court of equity will not undertake to decree specific performance of an alleged contract to devise or bequeath property. Reasonable certainty, however, is sufficient, and if the meaning of the contract, taken as a whole, is intelligible to the court, specific performance will be decreed. * * * Moreover, the courts are not inclined to regard with favor objections on the ground of the uncertainty of the agreement after the promissor has received the benefit of performance by the other party to the contract. * *" Citing 69 A.L.R. 51, 56, s. 106 A.L.R. 748.
Although the record is silent, it can hardly be imagined that over the years the parties who have occupied the houses, 1315 and 1319, did not recognize some line of demarcation between their properties. It is reasonable to assume that Catherine Phillips intended the promised devise to extend to such line, and that the occupants of the rear house would have the reasonable right to ingress and egress from their home to the street across the front of the lot. Upon the taking of further testimony on this score, the Chancellor should draw the line separating the properties based upon previous user, rather than let the promise fail merely because of an inexactness of description which presents no more of a practical difficulty than here; especially in view of appellees' faithful performance of the contract.
Having determined that Catherine Phillips promised to devise the home in which appellees lived, 1315, and nothing more, the question as to appellees' possession of the other house becomes immaterial.
In Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888, we repeated the rule earlier stated in Battle v. Butler, 138 Fla. 392, 189 So. 846, as to the essentials required to relieve an oral promise to devise real estate from the Statute of Frauds; namely, (1) payment of consideration, (2) possession by the promisee, (3) installation of valuable and permanent improvements by the promisee or the presence of such facts and circumstances as would make the transaction a fraud upon the promisee if not enforced.
The cases on the subject, where specific performance has been allowed, seem largely to revolve around situations where the promisee has substantially altered his status quo to his detriment in reliance upon the contract, or has performed services of such a peculiar nature as not to be compensable in a suit at law. See Annotations 69 A.L.R. 146, s., 160 A.L.R. 760.
The recent case of Cottages, Miami Beach, Inc., v. Wegman, Fla., 57 So.2d 439, 441, involved specific performance of an oral promise to convey an interest in real estate. The following was held to be the controlling rule in Florida:
"* * * rendition of services by the promisee in consideration of the promissor's oral pledge to convey an interest in land is ordinarily treated as equivalent to payment of the consideration of the contract, and, while this is not in itself sufficient part performance, the rendition of services together with possession of the property to which the contract relates is a sufficient part performance to take the contract out of the statute," irrespective of whether or not "* * * the services are capable of adequate pecuniary measurement and compensation."
There is a good reason why the requirements should be more stringent in avoidance of the Statute of Frauds in a case of an oral promise to devise than in one to convey real estate. In the former the cause of action arises only after the lips of the promissor are sealed in death, but in the latter the promissor usually may testify for himself.
*773 We have not, therefore, departed from the rule stated in Todd v. Hyzer, supra, in cases like the one under consideration.
As already indicated, the promise to devise and possession by the promisees were established, but no valuable and permanent improvements were shown. We turn then to the question of whether or not a fraud would be perpetrated upon appellees by refusal to enforce the contract.
We fail to see how appellees' forbearance to build a new home, especially in a time of inflation, together with the sale of the barbecue business, not required by the express terms of the contract or shown to have resulted in a loss, can be deemed to have substantially altered appellees' position to their detriment.
As to the nature of the services rendered, they are enumerated in paragraph 2 of the Master's findings, supra. In this connection it should also be observed that when Catherine Phillips made the promise the devise in November of 1949 she apparently felt that she had been neglected by her daughter. At that time and for the previous eight or nine months appellees stood in the relationship to decedent of close, kind, and attentive friends and neighbors, and they furnished the care and companionship that relatives would ordinarily be expected to supply. Such relationship continued until Catherine Phillips died in June, 1950, except as modified by the presence of appellant in her mother's home and her assistance with the care of decedent, after February, 1950.
There are several intangible factors as to the services rendered by appellees which give support to the Chancellor's determination that no pecuniary value could be placed upon them; such as the onerous character of the duties assumed due to the nature of decedent's illness, the extreme kindness which they exhibited toward her, and the companionship which they supplied as close, personal friends to a lonely old woman.
Numerous cases of a similar nature, from other jurisdictions, support the Chancellor's ruling on the point under discussion.
It is stated in 57 Am.Jur. 173, sec. 194:
"* * * Services in the nature of attendance upon the personal wants and in the nursing of another have a value which cannot be estimated in money when extra vigilance as well as tenderness in administering the services is the product of a close family relationship or of intimate friendship; contracts between brother and sister, uncle and aunt and nephew or niece, or between more distant relatives, friends, or acquaintances for the making of a bequest by the will of the one in favor of the other for services performed lend themselves readily to specific performance, where it appears that the personal relation entered into the contract and influenced the character of services rendered."
See also case cited in annotations, 69 A.L.R. 163, 106 A.L.R. 763.
In Wood v. Hammel, 132 Fla. 164, 181 So. 145, an elderly woman whose health was in a precarious condition offered to devise property worth $20,000 in return for promisee's personal care and services and agreement to live with her until she died. The services were performed but a few days after the agreement promissor died. Specific performance was refused because promisee knew that decedent had but a short time to live at the time the agreement was entered into, and, therefore, the breadth of her undertaking bore no reasonable relation to the value of the property involved.
There is no indication here, however, that appellees at the time they entered into the contract with Catherine Phillips expected to live but a short time, nor has any particular stress been laid upon the value of the property in question.
The Chancellor is affirmed in part and reversed in part, and the cause remanded for further proceedings consistent with this opinion, including the entry of a decree of specific performance as to part of the property only and for remission to appellant of the rentals from the house numbered 1319, since the death of Catherine Phillips.
The back portion of the property should be adequately described in the final decree *774 in accordance with usage and custom at the time of and immediately prior to the death of Catherine Phillips. The property known as 1319 is at the rear and had been rented, used and occupied. It could not be so used, rented and occupied without there being some line of demarcation established by use and custom. This is likewise true as to ingress and egress. The property could not have been used without a right or method or way of ingress and egress. The decree should be modified so as to clearly establish a right-of-way for ingress and egress to the property in accordance with usage and custom at the time of and prior to the death of Catherine Phillips.
It is so ordered.
SEBRING, C.J., and TERRELL, ROBERTS and MATHEWS, JJ., concur.
THOMAS, J., dissents.