382 So.2d 1323 (1980)
W.B.D., INC., a Florida Corporation, and William B. Dawson, III, Individually, Appellants,
v.
HOWARD JOHNSON COMPANY, a Maryland Corporation, Appellee.
No. KK-224.
District Court of Appeal of Florida, First District.
April 25, 1980.
Gerald R. Hart of Spinner, Hart & Cuddy, and Tyrie A. Boyer of Boyer, Tanzler, Blackburn & Boyer, Jacksonville, for appellants.
Robert E. Warren, Neil C. Taylor, Jacksonville, and B.K. Roberts of Roberts, Miller, Baggett, LaFace, Wiser & Richards, Tallahassee, for appellee.

*1324 ON PETITION FOR REHEARING GRANTED
MELVIN, Associate Judge.
The appellants seek to appeal from a judgment based upon a directed verdict in the jury trial that was entered for the defendant at the close of the plaintiffs' case. Such order granting a directed verdict is a judicial determination that the plaintiffs at that point have, as a matter of law, presented no evidence which, if believed by the jury, would be legally sufficient to support a verdict for them.
The first hurdle that appellants must clear is the question of this court's jurisdiction to consider the appeal. The jurisdictional question, strange as it may seem, was not presented by either party to this cause. It was raised by this court on its own motion upon further review of the record in connection with petitions for rehearing.
The record reveals that, on April 20, 1978, at the conclusion of the presentation of plaintiffs' evidence, the defense motion for a directed verdict was made and the court announced its decision to grant such motion. A motion for new trial was thereafter presented and denied. From that point forward the plaintiffs and defendants proceeded toward appellate review on the assumption that a final judgment had been entered.
On February 1, 1980 this court Sua Sponte, entered its order directing the attention of counsel to the absence of a final judgment and requested counsel for all parties to be prepared to argue the question of jurisdiction before the court on the date the cause had been set for argument on the pending motion for re-hearing.
Counsel for appellants on the oral argument date, February 11, 1980, filed a motion to supplement the record by permitting a final judgment that was rendered in the cause by the trial court on February 8, 1980, to be made a part of the record on appeal. The court has granted that motion. The clerk of the trial court has now certified to this court that neither party has filed any type of motion addressed to such final judgment. The time for filing any such motion has now expired. We come now to the heart-beat of the jurisdictional issue. What is the legal effect of the filing of a notice of appeal on June 21, 1978, as the same relates to the final judgment rendered thereafter on February 8, 1980? In Williams v. State, 324 So.2d 74, 79 (Fla. 1975), it was held:
"Leaving aside the question of obtaining supersedeas bond, we also hold that a notice of appeal which is prematurely filed shall not be subject to dismissal. Rather, such a notice of appeal shall exist in a state of limbo until the judgment in the respective civil or criminal case is rendered. At the time of rendition, the notice of appeal shall mature and shall vest jurisdiction in the appellate court."
See also, Bank of Port St. Joe v. State, 362 So.2d 96, 98 (Fla.App. 1st DCA 1978). Appellee urges that the case of State v. Wells, 326 So.2d 175 (Fla. 1976) is dispositive of the jurisdictional issue and is the latest pronouncement by the Supreme Court of Florida on this subject. With this position we do not agree. In State v. Wells, Justice Hatchett noted, at page 176, that no written order had ever been entered in the cause.
We hold that, upon the filing of the final judgment in this case, even though the same proceeded with lead-footed delay, the notice of appeal that was previously filed thereupon came out of limbo and became effective to confer jurisdiction in this court over the controversy. This case has been thoroughly briefed and argued as to the jurisdictional question, as well as to the merits of the cause. It would be a useless and unjustifiable squandering of attorney and judicial labor, as well as expense to parties litigant, to require the parties to go through the useless and expensive process of again briefing this cause. Such procedural gesture would assign more importance to FORM than to SUBSTANCE. We therefore adopt, as being effective, the records and briefs filed in this cause and have again considered the case in the light of argument of counsel for each party. Having jurisdiction to proceed, we will proceed to do so.
*1325 The parties will be referred to here as they were identified in the trial court.
Plaintiffs filed their complaint against Howard Johnson Company, a corporation, and it was couched in two counts. The first count charged breach of contract and the second count charged fraud and deceit for which compensatory and punitive damages were sought. After discovery had been completed, each party moved for summary judgment and each motion was denied. On different occasions the court granted the defendant leave to amend its answer to add various defenses, among which were the statute of frauds, asserting parol evidence rule, and alleging that the plaintiffs were seeking to vary the terms of a written instrument by parol evidence. To these affirmative defenses, plaintiffs presented the issue, among others, of waiver, expressed or implied.
The record reveals that, at the conclusion of plaintiffs' case, the defendant made the usual motion for a directed verdict. Previously the trial court had stated that it recognized that factual issues had been presented that would have to be presented for a jury determination. However, upon presentation of defendant's motion, the court granted the same stating:
"I'm going to grant the motion to dismiss (by the defendant) in this case. Granted on three grounds. First, outside the scope of the lease and the license. And, two, statute of frauds applies in this case. That's my decision."
In due season plaintiffs' motion for a new trial was presented and denied by the court.
From the evidence submitted by the plaintiffs to the jury, the jury may have found:
That the plaintiff Dawson was the owner of a tract of oceanfront property and had entered into a written franchise agreement with Howard Johnson whereby, for an initial consideration of $20,000, together with other considerations, Dawson had contracted to build a motel, lounge, and restaurant. Howard Johnson was to operate the restaurant and lounge. A written lease was executed on the same date as the franchise agreement, in which the defendant agreed to pay the plaintiff Dawson rent based upon a percentage of the income and a guaranteed minimum. Plaintiff Dawson was to operate the motel under the name of Howard Johnson and pay to the defendant a percentage of the income and other stated fees. A paragraph in the lease agreement prohibited Dawson from selling food or alcoholic beverages on the motor lodge premises and the agreement further provided that the same could not be modified or changed except in writing signed by the parties.
By the agreement, Dawson was obligated to construct a building, "Series 84LL, with cocktail lounge" and the typical plans for such building were approved by Dawson. The plans referred to an 84LL for the restaurant and lounge to be incorporated in the motor lodge plans and they were allegedly used by Dawson's architect. The restaurant and lounge plans provided for a seating capacity of 154 seats and occupied an area of approximately 5,100 square feet. Based upon these plans, it is alleged that Dawson secured a loan commitment. Detailed plans and specifications were to have been submitted within the stated time. Howard Johnson allegedly approved the same, but immediately on December 13, 1971, ordered a stop to any beginning of construction because of the "uncertainties" of purchasing a liquor license for this location. It was alleged to be the position of Howard Johnson, "If it is not possible to purchase a license, the style of the restaurant might have to be changed." When the stop order referred to was entered, Dawson allegedly ceased work on the property location where he had been engaged in preparing the site, such as building a sea wall. He alleges that he then entered into a further discussion with Howard Johnson about the problem that it was having in obtaining a whiskey license.
Dawson, according to the testimony, went to Braintree, Massachusetts, and talked with the architects of defendant about their beverage license problem. Dawson testified that he was told by these representatives *1326 of defendant, that, in order for Howard Johnson to qualify for an alcoholic beverage license in the state of Florida, the restaurant, which both parties had previously approved for 154 seats, would have to have a seating capacity of 200 seats. That, according to Howard Johnson, would allegedly require an increase in the area of the restaurant and also an increase in additional parking spaces. Dawson claimed that he accepted this representation and relied on it. He stated he previously had received a letter from Howard Johnson in the year of 1970 advising that he could rely implicitly on Howard Johnson's officials because they were experts in the hotel field and that defendant realized that Dawson was not particularly knowledgeable. Dawson claimed that he, at first, asked for additional rent for the 2,200 square feet that defendant now needed for the restaurant, lounge, and extra parking spaces, but Howard Johnson would not agree to that. Dawson testified that it was then agreed that he would give Howard Johnson the additional space, rent free, in exchange for Howard Johnson's agreement that Dawson could sell alcoholic beverages in the motor lodge area and could construct facilities thereon for such purpose. This alleged understanding was not thereafter reduced to writing, but architectural drawings thereof were allegedly prepared, viewed by representatives of both parties and testimony offered by the plaintiffs was to the effect that the agents of Howard Johnson specifically agreed to such construction by Dawson, such agreement being based upon the consideration of Dawson's granting to Howard Johnson the additional area space previously referred to, rent free.
The plans for Dawson's two-story poolside cocktail lounge were allegedly exhibited by Dawson's architect to the architects representing Howard Johnson and testimony was offered that they then confirmed the earlier alleged agreement that Dawson was entitled to construct and operate such lounge. There was also testimony that, at a meeting between architects for the parties, defendant's architects signed the motor lodge plans with the pencil sketch of Dawson's bar drawn thereon. Structural changes allegedly were made in the plans to accommodate the increased seating capacity and parking area for the benefit of the defendant. Also in the plans Dawson's lounge and bar referred to, were allegedly shown to include the extra plumbing and electrical wiring. Testimony was offered that all during the construction of the hotel, restaurant, and lounge, including the outside beverage lounge, that Dawson testified the defendant had agreed that he could have, in exchange for the extra rent free space referred to, the construction inspector for Howard Johnson, from the time of the construction of the hotel began until the work was completed, inspected the work and approved it. There was further testimony that drawings of all the changes were submitted by Dawson's architects to the defendant's architects and that at no time was any objection made by the defendant's representatives to the outlined proposed construction by Dawson of his lounge and recreation area. There was also testimony presented to the court and jury that Dawson expended over a million dollars in additional money in the construction of the hotel and his poolside lounge in reliance upon the defendant's alleged agreement that Dawson could sell alcoholic beverages. There was testimony presented that Dawson was advised by defendant's architect that he could go ahead and build the poolside bar according to the poolside recreation building plans. Testimony presented to the court was to the effect that Dawson had to borrow further money in connection with the construction of the hotel, restaurant, lounge, and poolside bar. Dawson allegedly applied for his liquor license and was notified by the Howard Johnson counsel not to proceed. It is alleged that Howard Johnson changed its posture with reference to its alleged independent agreement with Dawson that he could sell alcoholic beverages and they proceeded, by injunction, to prevent him from doing so. It was testified that, at this point, Dawson was heavily involved with a mortgage company and, at their insistence, Dawson agreed to the temporary *1327 injunction, but retained the right to litigate the matter at some later date. The record reflects that Dawson defaulted in his mortgage obligation bringing about foreclosure and the loss of his investment.
The foregoing claims on the part of the plaintiffs notwithstanding, the court, at the close of plaintiffs' case, denied plaintiffs their right to have a jury determination of the alleged issues of fact and the court, deciding such issues of fact, directed a verdict for the defendant.
The trial court apparently based its order granting the directed verdict on the court's understanding of the application of the parol evidence rule and the statute of frauds to the facts of this case. Neither the statute of frauds nor the parol evidence rule is applicable and we reverse.
The plaintiffs had presented before the jury two factual issues for determination. One issue was whether a new independent oral contract had been brought into existence that had been based upon a valuable consideration, and which had, allegedly, been fully performed by Dawson, and, allegedly, had been breached by Howard Johnson. Also presented was the factual issue as to whether the defendant, by its conduct, had waived its contract exclusive rights to sell alcohol in accord with the terms of the written documents. As to such issues, it is strongly urged by the defendant that the position of the plaintiffs is not viable for the reason that the written documents vest in Howard Johnson the exclusive right to sell alcoholic beverages upon the motel premises, and further, provide that such agreements may not be altered except in writing signed by both parties. The logic of the defendant continues to the effect that, in absence of a written alteration of the documents signed by both parties, there can be no change with reference to defendant's exclusive alcoholic sales rights on the motel premises and that a variation or change in that subject matter may not be established by the plaintiffs through the avenue of oral testimony.
We have pointed out the contention of the plaintiffs that the alleged oral contract, by which the plaintiffs granted additional seating space in the restaurant and parking space, was fully performed by the plaintiffs and that the same was allegedly breached by Howard Johnson.
It is well established that the statute of frauds may not be utilized as a defense to a verbal contract that has been fully performed on the part of the person claiming the benefit thereof. Dionne v. Columbus Mills, 311 So.2d 681 (Fla. 2d DCA 1975). The statute of frauds applies only to executory and not to executed contracts. Miami Beach First National Bank v. Shalleck, 182 So.2d 649 (Fla. 3d DCA 1966). When an oral contract has been fully performed by one party, the statute of frauds may not be employed as a defense, even though the subject matter of the contract is the conveyance of an interest in land. In Yates v. Ball, 132 Fla. 132, 181 So. 341 (1937), the court pointed out that such provisions in the statute of frauds applies only to contracts that are not to be performed on either side within the period of a year and that such provision has no application to contracts which were fully performed within the year on the part of either side. In this case, the jury may have found that Dawson had performed his portion of the verbal contract at the very time that he agreed to, and did, grant additional seating space and parking space to the defendant. The jury may have further found, under the testimony, that Howard Johnson accepted the rent free benefits of Dawson's performance under a new oral agreement and, therefore, Howard Johnson had waived and/or was estopped to assert its said written exclusive contract rights or the statute of frauds and thereby escape performance on its part. In Bellaire Securities Corporation et al. v. Brown, 124 Fla. 47, 168 So. 625, 639 (1936), the Supreme Court of Florida held that a party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution. The court further held that such ruling was not in conflict with the rule, that the terms of a sealed instrument can not be changed by *1328 parol evidence. In Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263, 265 (1945), the Supreme Court of Florida further held that:
"The law appears to be well settled that the statute of frauds cannot be invoked where non-performance of the original terms has been occasioned by the oral modification and a contract as modified has been fully performed."
It was Dawson's contention that he had fully performed his part of the oral contract, that Howard Johnson accepted the benefits of such performance and then breached the agreement to be performed by Howard Johnson.
In Thomas N. Carlton Estate, Inc. v. Keller et al., 52 So.2d 131, 133 (Fla. 1951), the Supreme Court of Florida ruled:
"`A waiver of a covenant by the party for whose benefit it is inserted may be made by parol.'"
The court then pronounced the rule:
"When a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it." (emphasis supplied)
From all of the authorities above-cited, it is abundantly clear that an executed contract based upon an oral agreement does not collide with the statute of frauds. The jury could have found that such an oral independent contract, fully executed, had come into existence as contended by Dawson. Further, the jury could have found that Howard Johnson, by its conduct, had waived the provisions in the written contract relating to its exclusive right to sell alcoholic beverages, and that it could not reclaim such exclusive right absent the consent of Dawson.
Count II of the complaint charged Howard Johnson with fraud and deceit for which money damages were sought. It is well established that the statute of frauds may not be used to sweep aside such claims when the same are based upon positive testimony. In Connelly v. Merritt, 273 So.2d 7 (Fla.App. 1st 1973), the court considered a situation in which the plaintiffs contended that the defendants had made certain false representations based upon which the plaintiffs were persuaded to purchase real estate lots. Plaintiffs alleged that the representations were that access would always be available to them to a lake and that such access would be accomplished as a result of the defendants reserving and maintaining a waterfront lot for such purpose. Defendants resisted this contention and urged that such representations, if considered to be otherwise valid, were precluded by the application of the statute of frauds. The court turned aside this contention and held that such statute does not operate as a defense to a claim for damages for false, oral representations which are alleged to result in money damages.
In the case here reviewed, Dawson did not seek to enforce any right or interest in real property. He sought only to enforce a claim for damages based upon an alleged breach of contract and alleged fraud and deceit said to have been practiced upon him by Howard Johnson. We hold that the statute of frauds does not stand as a shield before this type of claim.
The jury could have found that Dawson's claim of consideration on his part for the oral contract, relating to additional rent free concession, was a matter of no small financial significance. From the testimony, the jury could have found that the additional space for the seating in the restaurant and lounge had a value of approximately $160,000 and the additional parking spaces had a rent value of $21,000.
While it may be that the plaintiffs did not present evidence which would have been found to be credible by the jury and, therefore, would not have been acceptable by the jury as establishing an independent oral contract or establishing a waiver of the original contract provisions prohibiting Dawson from selling alcoholic beverages, it was the right of this plaintiff to have his cause determined by the jury and not by the judge. The learned trial judge, therefore, erred in substituting his judgment relating to the alleged facts for the judgment of the jury and thus displacing the function of the trial jury in our judicial system. We *1329 reverse with directions to grant a new trial and to proceed in accord with the views expressed in this opinion.
McCORD and SHIVERS, JJ., concur.