468 So.2d 390 (1985)
Thomas P. GOSLIN, Appellant,
v.
RACAL DATA COMMUNICATIONS, INC. f/k/a Racal-Milgo, Inc., Appellee.
No. 84-806.
District Court of Appeal of Florida, Third District.
April 23, 1985.
Rehearing Denied May 24, 1985.
*391 Thomas P. Goslin, in pro. per.
English, McCaughan & O'Bryan and Robert J. Schaffer, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
Appellant Goslin brought a three-count complaint against appellee, his former employer, seeking (1) specific performance of options to purchase stock of Milgo Electronic Corporation, (2) damages for an anticipatory repudiation of the Stock Option Agreement, and (3) damages for wrongful termination of his employment. Summary judgment was granted in favor of appellee on counts two and three. After a non-jury trial on the issue of liability as to count one, final judgment was entered for appellee on all three counts. Goslin brings this appeal from the adverse final judgment on counts one and two.
Four points are raised in this pro se appeal. The question which disposes of the entire appeal is whether a check issued to and cashed by Goslin in the amount of $15,025, which in accordance with an announced plan was in lieu of the stock options, constituted an accord and satisfaction. The trial court determined that it was. We agree.
In 1975, Goslin became an eligible "key" employee under a two-year-old Employees Qualified Stock Option Plan adopted by Milgo's Board of Directors. The agreement granted Goslin an option to purchase 2625 shares of Milgo stock at the price of $7.38 per share in accordance with the following schedule:

 On or after January 2, 1977 - 394 shares
 On or after January 2, 1978 - 525 shares
 On or after January 2, 1979 - 656 shares
 On or after December 2, 1979 - 1050 shares

The right to exercise each option was conditioned on continued employment as of the annual option date.
Shortly after January 2, 1977, Goslin exercised his right to purchase the first 394 shares of Milgo stock for $7.38 per share and tendered them to Milgo for $36 per share. Soon thereafter, in early 1977, Racal Electronics, Limited, a British corporation, purchased 98.4% of Milgo stock for $36 per share. Racal transferred the Milgo stock to Racal-Milgo, Inc., a new wholly-owned subsidiary of Racal, and Milgo stock was stricken from the New York Stock Exchange. Effective August 11, 1977, Milgo's corporate existence ended. The book value of the outstanding Milgo stock on that date was $15.13 per share. The holders of the remaining shares of Milgo stock accepted $36 per share to complete Racal-Milgo's "cash-out" merger.
A meeting of the Milgo Option Plan participants was held on October 11, 1977, which Goslin attended. It was announced that Racal-Milgo would compensate the Milgo Plan participants in cash rather than stock on the remaining option dates under the Plan. The amounts as to Goslin, as was explained, would be determined by subtracting the former option price ($7.38) from $36 and multiplying the difference by the number of Milgo shares which would have been available on the option date. As with the original Plan, the payments were conditioned upon continued employment on the annual option dates. Goslin disagreed with the Plan, as revised, preferring stock in Racal-Milgo, but undisputedly understood that the cash payment would be in lieu of stock. In accordance with the announcement made at the October, 1977 meeting, Goslin received a check dated January 3, 1978, which was one day after the second option date, in the amount of $15,025.50, less deductions for social security and income taxes. Although it was marked "Bonus,"[1] Goslin knew that it was, *392 and described it to others as his expected "option check." The check was cashed by Goslin who never offered to return the proceeds.
In March of 1978, Goslin's employment terminated. In May of 1978, his attempt to exercise the January 2, 1978 option for shares of Milgo stock was rejected. This action followed.
A defense of accord and satisfaction involves a two-step process of proof that (1) the parties mutually intended to effect a settlement of an existing dispute by entering into a superseding agreement, and (2) there was actual performance of the new agreement which acted to discharge the debtor's prior obligation. Rudick v. Rudick, 403 So.2d 1091 (Fla. 3d DCA 1981). It is not seriously disputed that there was an agreement, or that there was a satisfaction in accordance with the agreement.
Appellant's contentions are that (1) he was fraudulently induced to accept cash in lieu of stock based on the misrepresentation that his stock option rights terminated with the merger, and (2) the oral agreement made at the October, 1977 meeting was within the statute of frauds and unenforceable because it was not to be performed within a year. Neither contention requires extensive treatment.
Racal-Milgo relies on a provision in the Employees Qualified Stock Option Plan as authority for "modifying" the Plan. Paragraph six provides:
In the event of any other recapitalization, merger, consolidation, or reorganization, or, any other change in the corporate structure or Common Stock of the Company, the Board of Directors may make such adjustment, if any, as it may deem appropriate in the number and kind of shares available thereafter under the Plan for options, and the number and kind of shares deliverable upon subsequent exercise of the options then outstanding under the Plan and in the purchase prices under such options. [e.s.]
Whether the provision can be given as expansive an interpretation as it was assigned by Racal-Milgo, i.e., discretion to issue cash instead of stock, raises a justiciable question of law which at this stage is presumed to have been waived. The different question before us now is whether Racal-Milgo engaged in acts, omissions, or concealments involving a breach of a legal or equitable duty which resulted in damage to Goslin. See Moss v. Sperry, 140 Fla. 301, 191 So. 531, 538 (1939); Fishman v. Thompson, 181 So.2d 604, 608 (Fla. 3d DCA 1965), cert. denied, 188 So.2d 814 (Fla. 1966). Our examination of the briefs and the record reveal not the slightest evidence of fraud.
The statute of frauds argument is mooted by performance. Assuming that the substitute agreement was within the statute of frauds, in March, 1978, when Goslin was terminated, Racal-Milgo had fully performed according to the terms of that agreement. Full performance according to its terms took the substitute agreement out of the statute of frauds, notwithstanding that the agreement was not, at its inception, to be performed within the year. Hiatt v. Vaughn, 430 So.2d 597 (Fla. 4th DCA 1983); see also Dobbs v. Gorlitz, 443 So.2d 1068 (Fla. 3d DCA 1984) (fact that oral promise was performed within the year precluded summary judgment on statute of frauds ground).
By cross-appeal, Racal-Milgo complains that the trial court abused its discretion in denying its motion to tax costs of a trial transcript against Goslin. Imposition of costs after judgment is largely within the discretion of the trial judge, and will not be disturbed on appeal absent a clear showing of abuse of that discretion. Warner v. Caldwell, 354 So.2d 91 (Fla. 3d DCA 1977), cert. denied, 361 So.2d 836 (Fla. 1978). No clear abuse of discretion is demonstrated by the record.
Affirmed.
JORGENSON, J., concurs.
SCHWARTZ, Chief Judge (specially concurring).
I base my agreement with affirmance upon the simple proposition that, by cashing *393 the check which he knew represented the merged company's tender of the amounts arguably due for the 1978 option he sued upon below, Goslin effected as a matter of law an accord and satisfication of that claim. See Howard v. Greer, 440 So.2d 1309 (Fla. 3d DCA 1983), pet. for review denied, 450 So.2d 486 (Fla. 1984); Rudick v. Rudick, 403 So.2d 1091 (Fla. 3d DCA 1981).
NOTES
[1] The treatment of the payment by Racal-Milgo as a bonus is the subject of a dispute between the corporation and the Internal Revenue Service. It was not raised as an issue in the trial court and will not be considered here.