632 So.2d 149 (1994)
Roger COLLIER, Appellant,
v.
Bolling BROOKS, Appellee.
No. 92-642.
District Court of Appeal of Florida, First District.
February 11, 1994.
*150 Jeffrey P. Whitton of Whitton & Patterson, Panama City, for appellant.
Clifford C. Higby of Bryant and Higby, Chartered, Panama City, for appellee.
BARFIELD, Judge.
Roger Collier appeals from a summary judgment against him as plaintiff in a suit for breach of contract and unpaid wages, the trial court having determined that his claim for money damages is barred by the statute of frauds. With regard to the breach of contract claim, the record before us demonstrates a factual dispute as to whether the agreement at issue is one "that is not to be performed within the space of one year from the making thereof," so as to make applicable the provision of section 725.01, Florida Statutes,[1] that "no action shall be brought" unless the agreement is in writing and signed by the party to be charged. We therefore reverse the summary judgment on the breach of contract claim and remand for further proceedings.
In November 1989, Collier filed an amended complaint against Bolling Brooks, alleging that the two of them had entered into an agreement in January 1986 for Collier to be general manager of Brooks' business, Jones Motor Company, in Graceville. According to the allegations of the complaint, the parties agreed that if Collier were successful in "reversing the decline" in the company's business, he would receive twenty-five per cent ownership in the company, and that under his management business did improve. The complaint further alleged that after Collier "had fully performed and successfully accomplished the goals specified in the aforementioned contract," Brooks "refused to transfer any ownership whatsoever" to him, and sought damages for breach of contract and unpaid wages.
Brooks filed a motion for summary judgment, alleging that Collier was suing the *151 wrong defendant because his verbal agreement was with Jones Motor Company, not with Brooks, and asserting that any claims were barred by the Statute of Frauds, section 725.01, Florida Statutes. Attached to the motion for summary judgment was an affidavit in which Brooks swore that Jones Motor Company is a corporation with several stockholders, that Collier was paid $450 per week plus ten per cent of the net profit, and that the parties had agreed that after January 1987, if the company had profited under Collier's management, he would be given the opportunity to purchase capital stock from the stockholders, the amount and the price to be negotiated at that time. Brooks further swore that at no time during Collier's management did the company make a profit, and that by the express terms of the agreement, Collier's purchase of stock could not have been accomplished within one year.
Collier filed an affidavit in opposition to the motion, stating that in January 1986, "Boiling Brooks personally obligated himself to provide delivery of a portion of my payment for services rendered, to wit, 25% ownership of Jones Motor Company, contingent upon a reversal of a decline in business." Collier swore that at the time they entered into the agreement, Brooks represented that he owned fifty-one per cent of the stock in the company, and that the obligations under the contract "could have been, and were to have been, performed within one year."
The depositions of the parties indicated that Brooks was president of Jones Motor Company until the assets were sold in May 1989. Brooks testified that in January 1986, he and Collier agreed that Collier would come to work for the company as general manager, making $425 per week and ten per cent commission on the departments which were making money, and that "after a years (sic) employment if he had turned the business around and was making money then he would be offered to buy stock in Jones Motor Company, the amount and the price to be decided at that time." Brooks testified that, at the time of the agreement, he held twenty-five per cent of the company stock, A D. Williams held twenty-five per cent, and the remainder was owned by several relatives. He also testified that the company had been losing money for the five years prior to the agreement, and that it lost money in each of the ensuing three years.
Collier testified in his deposition that he was employed by Brooks "representing Jones Motor Company," that he was paid in cash every week "by Jones Motor Company and Bolling Brooks," and that he had a verbal agreement with Brooks representing Jones Motor Company. When asked about Brooks' affidavit, Collier stated:
A. Mr. Brooks and I made a deal him representing Jones Motor Company of $450 per week plus 10 percent, plus several other things that aren't mentioned in this paragraph. I have a disagreement with that paragraph.
Q. With what do you disagree in that paragraph?
A. He offered me 25 percent of the business to come in there, he told me I could buy up the other 25 percent from Mr. A.D. Williams that he had 25 percent of the stock. He also said I could have two demos, and pay all my health insurance which I've already beat him in court on that.
Collier testified that he was supposed to get the twenty-five per cent of the business within the first year" without payment of anything, even if the company lost money, and that Brooks told him he owned fifty-one per cent of the stock.
The trial judge issued an order granting the motion for summary judgment as to the wage claim, and denying it as to the breach of contract claim. Brooks filed an answer denying all the allegations of the complaint except that Collier was employed as general manager of Jones Motor Company, and raising as affirmative defenses that Brooks was not personally liable because the agreement was between Collier and Jones Motor Company and that the suit was barred by the statute of frauds. He counter-claimed against Collier on behalf of the stockholders of the company, alleging that if Collier were determined to be entitled to twenty-five per cent of the stock, then Collier would be legally obligated for twenty-five per cent of the *152 losses the company had sustained since January 1986.
Collier denied the affirmative defenses and counter-claim, and filed a motion for judgment on the pleadings of the counter-claim. He also filed the affidavit of Bill Bell, an employee of Jones Motor Company from July 1987 to October 1988, who swore that Collier had said that he would be part owner of the dealership, and that Brooks had confirmed the fact.
Brooks filed a renewed motion for summary judgment, asserting that the only way to transfer an ownership interest in a corporation is by the exchange of securities or capital stock in the corporation, and that section 678.319, Florida Statutes,[2] provides that a contract for sale of securities is not enforceable unless in writing. At the hearing on the motion, Collier argued that even if the statute of frauds applied, the doctrine of part performance took the agreement out of the operation of the statute, citing a decision of the Fourth District Court of Appeal, Leavitt v. Garson.[3] Brooks cited a federal decision from the Eleventh Circuit Court of Appeal, Dwight v. Tobin,[4] for the proposition *153 that under Florida law, the doctrine of part performance does not remove a contract from the statute of frauds for the purpose of seeking money damages, but would remove it in an equitable action for specific performance. The trial court's order stated:
... it would appear that the Defendant is entitled to a judgment as a matter of law in that Plaintiff's claim is barred by the Statute of Frauds.
Plaintiff's counsel, while not conceding the applicability of Florida Statutes § 678.319, contended that if applicable, part or full performance by Plaintiff removed the parties' agreement from the Statute of Frauds.
Assuming for the purpose of the Defendant's motion that Plaintiff had fully performed his part of the bargain, under Florida law, the doctrine of part performance is not available in an action solely for damages at law. Since by Plaintiff's Amended Complaint no equitable relief is sought, a judgment for damages is the only relief sought and the position of the Plaintiff is not well taken. See Dwight v. Tobin, 5 FLW Fed. C1818 [947 F.2d 455 (11th Cir.1991)] and the cases cited therein.
We reject the reasoning of the trial court and the arguments of the parties on appeal[5] to the extent they are predicated on the application of section 678.319 to this case, which involves an employment agreement, not a contract for the sale of investment securities under the Florida version of the Uniform Commercial Code. Having extensively reviewed the history of the Statute of Frauds from its enactment in England in the seventeenth century, including the various forms adopted by the individual states and the interpretations placed upon them by their respective jurisdictions, we find that we must reject Collier's arguments to the extent they rely on the doctrines of "part performance" and "full performance" as removing the agreement from the operation of section 725.01, Florida Statutes.[6]
The English statute enacted in 1676, entitled "An Act for the Prevention of Frauds and Perjuries," declared that certain types of oral promises or agreements would not be enforceable.[7] Included was "any agreement that is not to be performed within one year *154 of the making thereof."[8] Most American statutes of frauds follow the English statute in enumerating the classes of contracts required to be evidenced in writing in order to be enforceable, with some variations of wording.[9] Some jurisdictions tend toward restricting the operation of the statute by rigid construction, freely admitting and extending exceptions and distinctions supporting the enforceability of oral contracts, while other jurisdictions, commenting on the beneficial effects of the statute, tend to restrict rather than enlarge the exceptions.[10] In Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (Fla. 1937), the Florida Supreme Court observed:
The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos. To accomplish this, the statute requires that all actions based on agreements for longer than one year must depend on a written statement or memorandum, signed by the party to be charged. The statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection. 25 R.C.L. 442.
In determining whether a contract is within this provision of the statute of frauds, the supreme court held:
[W]hen no time is agreed on for the complete performance of the contract, if from the object to be accomplished by it and the surrounding circumstances, it clearly appears that the parties intended that it should extend for a longer period than a year, it is within the statute of frauds, though it cannot be said that there is any impossibility preventing its performance within a year. 25 R.C.L. 458.
Id.[11] The supreme court found that the agreement at issue in that case was by its terms "susceptible of performance within a year, and the evidence shows that it was expected to have been performed within that time," so that it was not within the statute of frauds. Id. It added:
Another fact lending support to this view is that the contract was fully performed on the part of the plaintiff before action was brought. The rule is generally approved in this country that the statute of frauds applies only to contracts not to be performed on either side within the year, and has no application to contracts which by intent were fully performed within the year on one side. If that rule is applied in this case, the plaintiff having performed the contract on his part within the year, the defendant cannot avail himself of the statute of frauds.
Id., 181 So. at 345 (cites omitted, emphasis added).[12] This doctrine, which is sometimes labeled "full performance" or "complete performance"[13] was articulated in an English case in which the court held enforceable a tenant's promise to pay five pounds for fifteen years, where the landlord had promised to spend fifty pounds in improvements and did so within a year.
As the contract was entirely executed on one side within a year, and as it was the intention of the parties, founded on a reasonable expectation, that it should be so, *155 the statute of frauds does not extend to such a case.
Donellan v. Read, 3 Barn & Ad 899, 110 Eng. Reprint 330 (1832).
The doctrine of "part performance" also arose early on in Florida, in actions for specific performance of contracts for the conveyance of land or an interest in land, based on the conviction that "the statute of frauds should not be used as an instrument of fraud." Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756, 759 (Fla. 1894). In Maloy v. Boyett, 53 Fla. 956, 43 So. 243, 246-47 (Fla. 1907), the Florida Supreme Court adopted the following language of the Utah court:
Courts of equity, in establishing the doctrine invoked by plaintiff, have not by any means intended to annul the statute of frauds, but only to prevent its being made the means of perpetrating a fraud. In order that a plaintiff may be permitted to give evidence of a contract not in writing, and which is in the very teeth of the statute and a nullity at law, it is essential that he establish, by clear and positive proof, acts, and things done in pursuance and on account thereof, exclusively referable thereto, and which take it out of the operation of the statute.
In Demps v. Hogan, 57 Fla. 60, 48 So. 998 (Fla. 1909), the supreme court held:
Where the owner of land, by himself or through his agent, makes a verbal contract of sale of such land to another for an agreed price, and puts the vendee in possession, upon compliance with the terms of his contract of purchase a court of equity will, in favor of such purchaser, enforce specific performance of such contract, notwithstanding the statute of frauds, requiring all contracts for the sale of lands, or some memorandum thereof, to be in writing and signed by the vendor.
And in Miller v. Murray, 68 So.2d 594, 596 (Fla. 1953), the supreme court stated:
The governing principles by which part performance may remove an oral contract for the sale of land from the effect of the Statute of Frauds are also well established. In addition to establishing the fact that an oral contract for sale was made, proof must be submitted as to the following: payment of all or part of the consideration, whether it be in money or in services; possession by the alleged vendee; and the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor  or, in the absence of improvements, the proof of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Battle v. Butler, 138 Fla. 392, 189 So. 846. Accord Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888; Purvis v. Malloy, 129 Fla. 191, 176 So. 71, 72.
Unlike the district courts of appeal, some of which have attempted to extend this doctrine beyond the circumstances under which it arose, the Florida Supreme Court has applied the doctrine of part performance only in suits involving specific performance of oral contracts for the conveyance of land or an interest in land.[14] Where a landowner sought damages for breach of an oral agreement in which the defendant had contracted to buy 500 standing trees for $1000, then cut 150 of the best ones and paid the owner $300, but refused to complete the agreement, the court held that a sale of standing timber is a contract concerning an interest in land, within the meaning of the statute of frauds, and that
Where a contract is for the sale of lands, or any interest therein, and is not in writing, no action at law can ever be maintained upon it. Part performance of such a contract is a ground for relief in equity only, and there on the principle of relieving from fraud.

*156 The suit here is nothing more than an action at law for the recovery of damages for alleged breach of an oral contract for the purchase of an interest in realty, which action is expressly forbidden by our statute of frauds.
Elsberry v. Sexton, 61 Fla. 162, 54 So. 592, 593 (Fla. 1911) (cites omitted). And in Canell v. Arcola Housing Corp., 65 So.2d 849, 851 (Fla. 1953), which involved an oral promise to create an casement that the court found "is clearly within the terms of the statute of frauds and thus cannot be enforced directly or indirectly" and "would amount to an unauthorized reformation of the description in the deed," it concluded:
Since the provision in the statute prohibiting any action to be brought on an oral contract within the statute includes actions based indirectly on the contract, "an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it." 25 R.C.L. 691. See also Dung v. Parker, 52 N.Y. 494. Although some courts have reached an opposite conclusion, 49 Am.Jur. p. 841; 23 Am.Jur. p. 889; Anno. 104 A.L.R. 1420, we think that on the facts of the case under consideration the rule quoted above is best calculated to uphold the theory upon which the statute of frauds is founded, in accord with the principle that so long as the statute can be made to effectuate its purposes, courts should be reluctant to take cases from its protection. Yates v. Ball, 132 Fla. 132, 181 So. 341.
We have discovered only two cases in which the Florida Supreme Court has addressed the question of whether the statute of frauds applied to employment agreements. In Grossman v. Levy's, 81 So.2d 752, 753 (Fla. 1955), the court held that an oral renewal of an oral one-year employment agreement, which commenced on the day the renewal was made, was not within the statute of frauds regardless of whether the original contract was unenforceable under the statute of frauds, noting:
Our statute of frauds, unlike the statutes of some states, 49 Am.Jur., Statute of Frauds, Sec. 23, does not declare an offending contract to be "void" or "invalid". Nor does it merit this construction, in spite of some casual language in Yates v. Ball, 132 Fla. 132, 181 So. 341. It merely states, so far as is relevant here, that "No action shall be brought whereby * * * to charge any person * * * upon any agreement that is not to be performed within the space of one year from the making thereof." (Italics added.) The statute thus pertains exclusively to the remedy... . If a contract which offends the statute were absolutely void and a nullity, it could not be held, as it has long been held by this court, that the statute applies only to executory and not to executed contracts. McDowell v. Ritter, 153 Fla. 50, 13 So.2d 612; Summerall v. Thoms, 3 Fla. 298. And the rule of the cases just cited is directly applicable here, because the original contract alleged had concededly been executed on both sides.
In Tanenbaum v. Biscayne Osteopathic Hospital 190 So.2d 777, 779 (Fla. 1966), the supreme court approved the district court's rejection of the doctrine of promissory estoppel,[15] "as a sort of counteraction to the legislatively created Statute of Frauds." The supreme court cited with approval its holding in Yates v. Ball that the statute of frauds should be strictly construed, and the district court's observation that
great caution should be exercised "in the consideration of the advisability of ingrafting onto the law of this State a provision *157 which may have the effect of nullifying the legislative will of the State as expressed by the inactment [sic] of the Statute of Frauds * * *."
190 So.2d at 778.
To the extent our sister courts, relying on the law of other jurisdictions or the opinions of commentators regarding the "modern trend" towards eviscerating the statute of frauds, have digressed from the principles which were laid down by the Florida Supreme Court in the aforementioned cases, we do not find their opinions to be persuasive authority.[16] To the extent opinions from this court have digressed from those principles, we do not find them to be binding on our decision in this case.[17] As noted in Dwight v. Tobin, recent decisions from the Florida district courts of appeal[18] "indicate that the venerable rule established in Elsberry v. Sexton over eighty years ago remains alive and well." 947 F.2d at 460.
It was Corbin who explained in his treatise on contracts that the course of decisions leading away from denying enforcement of promises that are not to be performed within one year is based upon public welfare and policy, not upon reason and logic. If Florida is to move toward enforcing oral promises intended to be performed beyond one year, or towards compensating those who enter into such agreements, it is the proper function of the Florida Legislature to announce that public policy change, not the function of a district court of appeal. While the Florida Supreme Court has occasionally chosen to depart from its own precedent on public policy grounds, we note that it frowns on such departures by lower courts. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
The parties in this case do not dispute the existence of the oral employment agreement, but disagree with regard to some of its terms. They do not dispute that in January 1986 they entered into an oral agreement, which was not reduced to writing, that Collier would manage Jones Motor Company, in which Brooks had an ownership interest, and that Collier would be paid $450 per week plus ten per cent of the net profit. The evidence indicates that the parties also agreed that upon some contingency involving the success of the business (the exact nature of which is in dispute), Collier would be entitled to some ownership interest in the business (the manner of transfer and exact terms of which are also in dispute). The parties have taken opposing positions regarding the time in which the agreement was to have been performed[19] and summary judgment *158 is precluded by this factual dispute, the resolution of which will determine whether section 725.01 bars Collier's damages claim for breach of contract.
On remand, the trial court must determine, "from the object to be accomplished" by the agreement and the surrounding circumstances, whether "it clearly appears that the parties intended that it should extend for a longer period than a year." See Yates v. Ball, 181 So. at 344. If the court so finds, it must then determine whether it was the intention of the parties that Collier would fully perform his part of the agreement within one year, and whether Collier did in fact fully perform his part of the agreement within one year. If the court does not find that the parties intended that Collier would, and also that Collier actually did, fully perform his part of the agreement within one year, section 725.01 bars any action to enforce the agreement. Id. at 345. In light of the supreme court's decision in Tanenbaum, we do not believe that it would approve extending the application of the narrow doctrine of "part performance" to an action which does not in any way involve an agreement to convey land, and which seeks, not the equitable remedy of specific performance of the contract, but the common law remedy of damages for breach of contract.[20]
The summary judgment is REVERSED and the cause is REMANDED to the trial court for further proceedings consistent with this opinion.
SMITH, J., concurs.
ERVIN, J., concurs and dissents, with a written opinion.
ERVIN, Judge, concurring and dissenting.
I concur with the majority's decision to reverse and remand the summary judgment, but dissent from its interpretation of the full-performance doctrine. The majority considers the doctrine applies only if the parties intended that one party perform the agreement within one year, and the party fully performs within such time. Its conclusion is contrary to prior authority from this and other courts in Florida, which hold that full performance by one party removes the contract from the operation of the statute of frauds, without consideration of the parties' intent and the length of time before completion. See, e.g., Moneyhun v. Vital Industries, Inc., 611 So.2d 1316, 1319 (Fla. 1st DCA 1993); AV-MED, Inc. v. French, 458 So.2d 67, 69 (Fla. 3d DCA 1984); Hiatt v. Vaughn, 430 So.2d 597, 598 (Fla. 4th DCA 1983); Venditti-Siravo v. City of Hollywood, 418 So.2d 1251, 1253 (Fla. 4th DCA 1982); Gerry v. Antonio, 409 So.2d 1181, 1183 (Fla. 4th DCA 1982); Dionne v. Columbus Mills, Inc., 311 So.2d 681, 683 (Fla. 2d DCA 1975); Miami Beach First Nat'l Bank v. Shalleck, 182 So.2d 649, 651 (Fla. 3d DCA 1966).[1]See also 2 Arthur L. Corbin, Corbin on Contracts § 457 (1950 & Supp. 1993) (adhering to the general rule from numerous jurisdictions that full performance beyond one year renders the statute of frauds inapplicable).
Because the issue of whether Collier fully performed his part of the parties' agreement is a disputed issue of material fact, I would simply reverse the summary judgment and remand for further proceedings without any directions to the lower court regarding the parties' intent or the length of time required *159 for Collier to perform. In other words, if the evidence discloses that Collier fully performed his part of the agreement, the existence of evidence showing that the parties did not intend that Collier would fully perform the agreement within one year, or that the contract was not fully performed within such time is immaterial to his right to enforce the terms of the agreement.
NOTES
[1] 725.01 Promise to pay another's debt, etc.  No action shall be brought whereby to charge any executor or administrator upon any special promise to answer or pay any debt or damages out of his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person or to charge any person upon any agreement made upon consideration of marriage, or upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them, or for any lease thereof for a period longer than 1 year, or upon any agreement that is not to be performed within the space of 1 year from the making thereof, or whereby to charge any health care provider upon any guarantee, warranty, or assurance as to the results of any medical, surgical, or diagnostic procedure performed by any physician licensed under chapter 458, osteopath licensed under chapter 459, chiropractor licensed under chapter 460, podiatrist licensed under chapter 461, or dentist licensed under chapter 466, unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized.
[2] 678.319 Statute of frauds.  A contract for the sale of securities is not enforceable by way of action or defense unless:

(1) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;
(2) Delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send a written objection to the issuer within 10 days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;
(3) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under subsection (1) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt; or
(4) The party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.
[3] 528 So.2d 108 (Fla. 4th DCA 1988). In that case, the court reversed a summary judgment for the appellee because it found that there was a factual dispute regarding whether the appellee had paid the appellant's decedent $7000 for 100,000 shares of stock in AGA of America. The appellee had sought specific performance and damages for breach of contract and fraud, alleging that the transaction was memorialized in a letter attached to the complaint. The appellant had denied that there was a contract between the parties. The court also reversed the denial of the appellant's motion to amend its answer to include the affirmative defense of the statute of frauds, noting the appellee's contention "that since he paid $7,000 as consideration for the stock, section 678.319 would not have been a valid defense to his claim," but observing that "if a trier of fact were to determine that appellee did not pay the $7,000, then section 678.319 would be a valid defense." Id. at 111.
[4] 947 F.2d 455 (11th Cir.1991). That case involved in part a suit by one partner against the other for breach of a partnership agreement. The district court had agreed with the defendant partner that the Florida statute of frauds applied to the alleged partnership agreement, but held that the doctrine of part performance removed the statute of frauds barrier. The Eleventh Circuit Court of Appeals found that the statute of frauds did apply to the agreement, but reversed the district court's ruling that the doctrine of part performance removed the contract from the operation of the statute of frauds, citing Elsberry v. Sexton, 61 Fla. 162, 54 So. 592 (1911), in which the Florida Supreme Court unequivocally held that part performance is an equitable doctrine and is not available in actions for damages at law.

The court noted that the plaintiff partner had cited "a handful of cases in which Florida District Courts of Appeal have failed to apply this rule," but stated, "we do not believe that these cases signal a change in the otherwise settled law of the state." 947 F.2d at 459. It noted that in three of the four cases cited, the court "seemed unaware of the equity limitation." Id. It pointed out that the fourth case was an action brought under the Florida version of the Uniform Commercial Code, in which the court specifically relied on special provisions for the applicability of partial payment in the Florida Uniform Commercial Code statute of frauds, and found that the case "in no way stands for the more general proposition that partial performance is available in all actions for damages." Id. at 460.
The court observed that other decisions of the Florida district courts of appeal "indicate that the venerable rule established in Elsberry v. Sexton over eighty years ago remains alive and well" and concluded that "[u]ntil the Florida Supreme Court shows some definitive indication that it intends to change the rule limiting partial performance to actions in equity, we must follow this rule." Id.
[5] Collier argues that summary judgment was improper because the "well established exception to the statute of frauds for contracts in which one party has performed" applies to section 678.319, and that the trial court's application of an "exception to this exception" for actions at law as opposed to equity was error. He relies on Evans v. Parker, 440 So.2d 640 (Fla. 1st DCA 1983), an action for damages in which this court held that "it is axiomatic that partial performance of an oral contract removes such contract from the statute of frauds." This case was discussed in Dwight v. Tobin, where the federal court observed:

While one Florida district court of appeals may have neglected to apply the equity rule at the time the court decided Evans, see Bertram Yacht Sales, Inc. v. West, 209 So.2d 677 (Fla. Dist. Ct. App. 1968), one could hardly say that it was "axiomatic" that partial performance would remove the statute of frauds bar to an action at law. It simply appears that this point was neither raised nor argued before the court.
947 F.2d at 459-60. Collier contends that the trial court erred in ruling that the doctrine of part performance is not available in an action solely for damages, noting the "modern trend to abolish the artificial distinctions between equity and law to focus on the substance of the issue."
Alternatively, Collier asserts that he fully performed his part of the contract, so that "part performance" is not involved here. He argues that section 678.319 "requires a writing to enforce a contract for sale of securities unless there is a written confirmation which is not objected to or payment has been made," notes that the statute makes no distinction between law and equity, and asserts that he made payment for his stock by commencing and maintaining his employment with Jones Motor Company.
Brooks asserts that Collier's action has always been for breach of contract and money damages, and that Collier consciously decided not to pursue an equitable remedy of specific performance. He argues that it is clear from Collier's affidavit that delivery of part ownership in the business was "contingent upon a reversal of a decline in the business," that the parties never defined the period of time for which this "reversal" was to take place, and that Bell's affidavit makes it clear that the contingencies of the verbal agreement had not been fulfilled over a year and a half after Collier went to work for the company.
[6] See footnote 5.
[7] See 72 Am.Jur.2d Statute of Frauds § 1, and the cases cited therein.
[8] 29 Charles II (1676) Ch. 3, § 4.
[9] 72 Am.Jur.2d Statute of Frauds § 3. See also 3 Samuel Williston, A Treatise on the Law of Contracts § 450 (3d ed. 1960).
[10] Williston, supra, at § 448. See also 2 Arthur Linton Corbin, Corbin on Contracts § 275 (1950).
[11] In Markowitz Bros., Inc. v. John A. Volpe Const. Co., 209 F. Supp. 339, 340 (S.D.Fla. 1962), the court referred to this statement as a dictum citing with approval the "minority rule," which it found to be applicable, "in light of the past rulings in Florida  and the more persuasive rationale of the minority position, especially in this day of negotiations looking to the formation of informal contracts not under seal."
[12] See also 72 Am.Jur.2d Statute of Frauds § 19.
[13] "[I]t must be borne in mind that cases involving complete performance by one party, as well as cases of part performance by one or both parties, are, strictly speaking, cases of part performance and the courts in considering cases of complete performance by one party often use the terminology `part performance.'" Annotation, Performance as taking contract not to be performed within a year out of the statute of frauds, 6 A.L.R.2d 1053, 1063 (1949).
[14] Condrey v. Condrey, 92 So.2d 423 (Fla. 1957); Cottages, Miami Beach v. Wegman, 57 So.2d 439 (Fla. 1951), reh. denied, 59 So.2d 528 (Fla. 1952); Demps v. Hogan, 57 Fla. 60, 48 So. 998 (Fla. 1909); Maloy v. Boyett, 53 Fla. 956, 43 So. 243 (Fla. 1907). See also Gable v. Miller, 104 So.2d 358 (Fla. 1958); Miller v. Murray, 68 So.2d 594 (Fla. 1953); Green v. Price, 63 So.2d 337 (Fla. 1953); Burton v. Keaton, 60 So.2d 770 (Fla. 1952); Dixon v. Clayton, 44 So.2d 76 (Fla. 1949); Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888 (Fla. 1944); Battle v. Butler, 138 Fla. 392, 189 So. 846 (Fla. 1939); Chamberlain v. Chamberlain, 150 Fla. 21, 155 So. 136 (Fla. 1934); Williams v. Bailey, 69 Fla. 225, 67 So. 877 (Fla. 1915).
[15] Estoppel theory has been found to be related to the doctrine of part performance. Annotation, Action by employee in reliance on employment contract which violates statute of frauds as rendering the contract unenforceable, 54 A.L.R. 715, § 3 (1992 pocket part).

And in Winters v. Alanco, Inc., 435 So.2d 326, 331 (Fla. 2d DCA 1983), involving an casement in land, the court noted:
The doctrine of part performance is based not on the theory that part performance is a substitute for the written evidence required by the Statute of Frauds, but on the theory that the defendant should be estopped, in view of the part performance in reliance on the defendant's inducement or acquiescence, to assert the statute as a defense.
[16] See, for example, Goslin v. Racal Data Communications, Inc., 468 So.2d 390 (Fla. 3d DCA), rev. denied, 479 So.2d 117 (Fla. 1985); AV-MED, Inc. v. French, 458 So.2d 67 (Fla. 3d DCA 1984); Hiatt v. Vaughn, 430 So.2d 597 (Fla. 4th DCA 1983); Dionne v. Columbus Mills, Inc., 311 So.2d 681 (Fla. 2d DCA 1975); Miami Beach First National Bank v. Shalleck, 182 So.2d 649 (Fla. 3d DCA 1966).
[17] See, for example, Moneyhun v. Vital Industries, Inc., 611 So.2d 1316 (Fla. 1st DCA 1993); Elliot v. Timmons, 519 So.2d 671 (Fla. 1st DCA), rev. denied, 525 So.2d 878 (Fla. 1988); Futch v. Head, 511 So.2d 314 (Fla. 1st DCA), rev. denied, Head v. Futch, 518 So.2d 1275 (Fla. 1987); Evans v. Parker, 440 So.2d 640 (Fla. 1st DCA 1983); W.B.D., Inc. v. Howard Johnson Co., 382 So.2d 1323 (Fla. 1st DCA), rev. denied, Howard Johnson Co. v. W.B.D., Inc., 388 So.2d 1114 (Fla. 1980).
[18] The Eleventh Circuit cited Winters v. Alanco, Inc., Tanenbaum v. Biscayne Osteopathic Hospital, Inc., and Williams v. Faile, 118 So.2d 599 (Fla. 1st DCA 1960). We also note the cases previously cited in this opinion, and the following cases holding that part performance of a contract for personal services is not an exception to the provisions of the Statute of Frauds: Miller Construction Co. v. First Industrial Technology Corp., 576 So.2d 748 (Fla. 3d DCA 1991); Johnson v. Edwards, 569 So.2d 928 (Fla. 1st DCA 1990); Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); and Rowland v. Ewell, 174 So.2d 78 (Fla. 2d DCA 1965). Most recently, in Hospital Corporation v. Associates in Adolescent Psychiatry, S.C., 605 So.2d 556 (Fla. 4th DCA 1992), rev. dismissed, Associates in Adolescent Psychiatry, S.C. v. Hospital Corporation, 626 So.2d 203 (Fla. 1993), the court held that the doctrine of part performance does not remove the bar of the statute of frauds from actions for damages based upon breach of oral contracts, relying in part on Dwight v. Tobin and distinguishing Elliot v. Timmons, Futch v. Head, Evans v. Parker, and W.B.D., Inc. v. Howard Johnson Co.
[19] Brooks swore in his affidavit that by the express terms of the agreement, Collier's purchase of stock could not have been accomplished within one year. He testified in his deposition that "after a years (sic) employment if he had turned the business around and was making money then he would be offered to buy stock in Jones Motor Company, the amount and the price to be decided at that time." Collier swore in his affidavit that the obligations under the contract "could have been, and were to have been, performed within one year" and testified in his deposition that he was supposed to get twenty-five per cent of the business "within the first year" from Brooks, without payment of anything, even if the company lost money.
[20] We note that Collier may alternatively seek compensation in quantum meruit for the reasonable value of the services he rendered, to the extent he has not already been compensated by the salary and commissions he received.
[1] If the evidence shows that Collier fully performed within one year, the following cases provide additional authority for his position: Futch v. Head, 511 So.2d 314, 319 (Fla. 1st DCA), review denied, 518 So.2d 1275 (Fla. 1987); W.B.D., Inc. v. Howard Johnson Co., 382 So.2d 1323, 1327 (Fla. 1st DCA), review denied, 388 So.2d 1114 (Fla. 1980); Goslin v. Racal Data Communications, Inc., 468 So.2d 390, 392 (Fla. 3d DCA), review denied, 479 So.2d 117 (Fla. 1985).